**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **ANITA GOVIC,** | ) |
| **Plaintiff,** | ) **Case No.** |
| | ) |
| **v.** | ) |
| | ) |
| **STERIGENICS U.S. LLC; BOB NOVAK;** | ) |
| **ROGER CLARK; and GTCR, LLC,** | ) **JURY TRIAL DEMANDED** |
| **Defendants.** | ) |
| | ) |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441 & 1446, Defendant Sterigenics U.S., LLC

("Sterigenics") hereby removes to this Court the above-styled action, pending as Case No. 2018-

L-011252 in the Circuit Court of Cook County, Illinois ("the Action"). In support of this Notice

of Removal, Sterigenics states as follows:

**I.     INTRODUCTION.**

1.     The Action is properly removed to this Court pursuant to the federal removal

statute, 28 U.S.C. § 1441, because: (i) the Action is pending in the Circuit Court of Cook

County, Illinois, which is within the Northern District of Illinois, Eastern Division, 28 U.S.C.

§ 93(a)(1); (ii) the Court has both diversity jurisdiction and original federal jurisdiction over the

Action; and (iii) the procedural requirements for removal set forth in 28 U.S.C. § 1446 and 28

U.S.C. § 1453 are satisfied.

2.     More specifically, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a),

because complete diversity of citizenship exists as between Plaintiff Anita Govic ("Plaintiff")

and Sterigenics. Defendants GTCR, LLC ("GTCR"), Bob Novak, and Roger Clark are

fraudulently joined to the Action, thus their citizenship should be disregarded for purposes of

determining diversity. Additionally, this Court also has original federal jurisdiction under 28

U.S.C. § 1331, as the Action arises under federal law.

## II.    FACTS.

3.      On October 17, 2018, Plaintiff filed a Complaint in the Circuit Court of Cook

County, Illinois. On October 29, 2018, Plaintiff filed a Routine Motion for Leave to File First

Amended Complaint, which was granted by the Court. Defendant GTCR was served with the

First Amended Complaint on December 3, 2018. Defendant Sterigenics was served with the

First Amended Complaint on December 5, 2018. A copy of the First Amended Complaint as

attached to Plaintiff's Routine Motion for Leave to File First Amended Complaint, is attached as

Exhibit A. This case arises out of an August 21, 2018, report issued by the federal government's

Agency for Toxic Substances and Disease Registry ("ATSDR") concerning emissions of

ethylene oxide in Willowbrook, Illinois, where Sterigenics operates a contract sterilization

facility (the "Willowbrook facility"). A copy of this report is attached as Exhibit B. The

ATSDR's report was published by the U.S. Environmental Protection Agency ("USEPA") on its

public-access website on August 22, 2018.[1]

### A.    Background on Sterigenics and Ethylene Oxide.

4.      Sterigenics is a leading provider of state-of-the-art sterilization services. Ethylene

oxide, a gas, is a heavily regulated chemical. As detailed here, Sterigenics' use of ethylene oxide

at the Willowbrook facility is subject to federal regulations promulgated by USEPA and the

federal Food and Drug Administration ("FDA"), as well as Illinois regulations promulgated by

the Illinois Environmental Protection Agency ("IEPA"). Sterigenics' Willowbrook facility is

---

[1] *See Evaluation of Potential Health Impacts from Ethylene Oxide Emissions*, U.S. DEP'T OF HEALTH AND HUM. SERVICES 1 (August 21, 2018), https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf.

operating legally and in compliance with applicable regulations. Indeed, Sterigenics'

Willowbrook facility not only meets federal and state standards, but exceeds them. (Declaration

of Kathleen Hoffman ("Hoffman Decl.") ¶¶ 2, 5 (attached as Exhibit C).)

5.      Sterigenics primarily contracts with healthcare products companies to sterilize

medical devices, medical equipment, and surgical kits sold or used by those customers. The

FDA regularly inspects[2] Sterigenics' facilities, including the Willowbrook facility, given the

importance of sterilization as a final step in the production and preparation of medical and

surgical products in the U.S. (*Id.* at ¶¶ 3–4.)

6.      Ethylene oxide is critical to the healthcare industry. Over 50% of the medical

devices and nearly 90% of the surgical kits[3] used in patient procedures in the U.S. are sterilized

by ethylene oxide. According to the Ethylene Oxide Sterilization Association, ethylene oxide

sterilizes over 20 billion medical devices each year in the United States alone. (*Id.* at ¶ 5.)

7.      The Willowbrook facility, like many ethylene oxide sterilization process plants, is

the sole sterilization facility for a number of medical device companies in the Midwest. On an

average day, the Willowbrook facility sterilizes 1,000 cardiac devices used in heart surgery,

1,000 knee implants, 1,500 surgical procedure kits, 16,000 catheters, 11,000 syringes for

injections used in radiology diagnosis, and thousands of diabetes monitoring and care kits, renal

care products, neurosurgical devices, and respiratory care products. (*Id.* at ¶ 6.)

---

[2] *See Compliance Policy Guide Section 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm073824.htm (last visited Dec. 4, 2018).

[3] A "surgical kit" refers to the set of instruments a surgeon uses during an operation. This may include scalpels, clamps, surgical staplers, drills, and other equipment such as the sterilized gowns and drapery used during the procedure. (Hoffman Decl. ¶ 3.)

8.    For the vast majority of single-use medical devices, complex implantable devices, and surgical kits, ethylene oxide sterilization is widely used because it is the only practical, FDA-approved sterilization method available.  While heat and radiation can sometimes be used for sterilization, those processes degrade plastics and other synthetic materials that are widely used in medical devices and surgical kits, including hypodermic needles, catheters and many other common hospital and operating room equipment.  (*Id.* at ¶ 8.)  Indeed, according to Alec Messina, IEPA Director, ethylene oxide "is the sterilizer of choice because gamma radiation— has too harsh of an effect and . . . oftentimes can destroy . . . that material that . . . they're sterilizing."  (Transcript: Illinois Senate Hearings, Environment and Conservation Committee Hearings (November 14, 2018) at p. 98–99 (Exhibit H).)  Without ethylene oxide sterilization, infection risks would soar dramatically in hospitals and operating rooms.  (Hoffman Decl. at ¶ 7.) As explained by Messina, "the vast majority of medical equipment that [hospitals] have comes from commercial sterilizers that are using ethylene oxide."  (Ex. H. at p. 99–100.)  For heat- and irradiation-sensitive devices, no currently available sterilization method exists that has been accepted and approved as a practical replacement for ethylene oxide.  (Hoffman Decl. at ¶ 9.)

9.    The Willowbrook facility is subject to stringent FDA requirements.  As part of its Good Manufacturing Practices regulations, the FDA requires that medical devices and equipment be sterilized pursuant to exacting protocols that must be rigorously tested and validated.[4] Detailed procedures exist for the equipment, methods, and steps used for the ethylene oxide sterilization of each type of medical device or surgical kit at the Willowbrook facility, and that equipment is continually checked and calibrated to ensure adherence to those procedures.  (*Id.* at

---

[4] *See Compliance Policy Guide Section 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/ICECI/ComplianceManuals/ CompliancePolicyGuidanceManual/ucm073824.htm (last visited Dec. 4, 2018).

¶ 10.) These FDA-required validation and calibration processes are expensive and can take anywhere from four to six months to complete. (*Id.* at ¶ 11.)

10. Moreover, it is important to understand that ethylene oxide is present in an urban atmosphere, such as the Chicago area, from a number of different sources, including natural sources as well as everyday and commercial activities. Commercial sources of ethylene oxide in the air we breathe include chemical manufacturers, hospitals, and medical sterilization facilities near where people work or live. (*Id.* at ¶¶ 13–14.) More than a dozen medical facilities located in DuPage and Cook counties exist that use ethylene oxide to sterilize medical products – Sterigenics' Willowbrook facility is far from alone. (*Id.* at ¶ 15.) As a result of all of these natural and other sources, a general background level of ethylene oxide exists in the air. Not surprisingly, then, USEPA itself explicitly recognizes that a certain level of ethylene oxide will be present in the environment and the air we all breathe. (*Id.* at ¶ 12.)

**B.     The Release of the ATSDR Report.**

11. On August 21, 2018, ATSDR released a report purporting to address whether ethylene oxide emissions from the Willowbrook facility pose a public health problem for people living and working in or near Willowbrook. Broadly speaking, the ATSDR report combined data gathered by USEPA with a new and controversial risk assessment used by USEPA to estimate the potential risk posed by any given concentration of ethylene oxide. (This 2016 assessment was derived pursuant to USEPA's Integrated Risk Information System ("IRIS") program.) Based on these inputs, the ATSDR report concluded that if the ethylene oxide concentrations actually represented Willowbrook area residents' exposure (*which it did not*), those residents could face potential increased cancer risks. Unfortunately, the report was released with neither context nor explanation. (Ex. H at p. 103, "I don't think that—the

5

information that was made available publicly was really presented with sufficient context.".)

As noted in a letter signed by Senators Tammy Duckworth and Richard Durbin, as well as

Representative Bill Foster, "[t]he lack of context has led to confusion, anxiety, and hardship

on both the part of the community and Sterigenics."  A copy of this letter is attached as

Exhibit D.[5]

12.     During an August 29, 2018, Willowbrook town hall meeting, an ATSDR

representative acknowledged that its report is "not one that indicated immediate health threat or

that there was an emergency situation."  (Videotape: Highlights from Village of Willowbrook, IL

Town Hall Meeting (August 29, 2018) at 0:42 (to be filed as Exhibit E).)  As the ATSDR

representative explained, its "communication strategy fell through [and] did not allow us to

really put this [report] into context."  (*Id.*)  Willowbrook Mayor Frank Trilla attempted to allay

community fears caused by the report by stating that ATSDR "took the [worst] case scenario,

multiplied it by 30 years, 250 days a year, 24 hours exposure . . . and the wind had to be identical

for the entire 30 years — under those circumstances 6.4 people out of 1,000 ***might*** be affected by

this."  (*Id.* at 8:20.)  An ATSDR research officer also attempted to downplay concerns regarding

the report by informing residents that ATSDR "biased [the results] on purpose to try to capture

what might be the worst exposure in the community when they're downwind from the facility."

(*Id.* at 9:55.)  The ATSDR representative also admitted, "I don't know if anyone's home 24

hours a day, 7 days a week for an entire year for 33 years.  Which is what we assumed."  (*Id.* at

10:22.)

---

[5] A copy of this letter was also published on Senator Duckworth's website. *See* https://www.duckworth.senate.gov
/imo/media/doc/18.09.21%20-%20Letter%20re%20Willowbrook%20ambient%20air%20testing%20request%20-
%20EPA%20Wheeler%20and%20Stepp%20(002).pdf.

13.     In calculating the exposure risk in its extreme, worst-case hypothetical, ATSDR also used the highest concentration of ethylene oxide detected in the residential area samples, which were collected under non-representative weather conditions designed to yield the highest possible number.  (Ex. B at p. 11.)  As the ATSDR representative admitted, this concentration is ***not*** reflective of actual long-term exposure.  In addition, ATSDR intentionally excluded from consideration 37 samples and used only 2 samples that reflected the highest levels of exposure.  (Ex. B at p. 5–7.)  Importantly, the ATSDR report did ***not*** find Sterigenics to be in violation of any applicable USEPA or IEPA regulation or requirement.  Indeed, Alec Messina, IEPA Director, stated during the August 29, 2018, town hall meeting that the Willowbrook facility is "in compliance with all the federal regulations including the emissions standards for ethylene oxide . . . . [The facility is] in compliance with those regulations and state law."  (Ex. E at 3:46.)

14.     Finally, nearly three months after the release of the ATSDR report, the USEPA admitted that the ATSDR ***relied on invalid data*** and that the risk to the public may have been overstated. More specifically, ***over the Thanksgiving weekend,*** USEPA admitted that the analysis methodologies utilized during the air quality monitoring—including the monitoring activities that took place around Sterigenics' Willowbrook facility in May 2018 and which formed the basis of the ATSDR report—were flawed and that, as a result, the collected samples ***are not a valid representation of ethylene oxide concentrations in Willowbrook, Illinois***.[6]  In

---

[6] *See Outdoor Air Monitoring in the Willowbrook Community: Potential Issue Regarding Previous Entylene [sic] Oxide Monitoring Result*, U.S. ENVTL. PROTECTION AGENCY, https://www.epa.gov/il/outdoor-air-monitoring-willowbrook-community#issue (last visited Dec. 4, 2018).

fact, under the USEPA's methodology, the measurements taken combined both ethylene oxide and an entirely different compound **commonly found in automotive exhaust**.[7]

**C.      Further Responses to the ATSDR Report.**

15.      Following the ATSDR report's release, William L. Wehrum, the Assistant Administrator of USEPA for Air and Radiation, attempted to provide greater clarity on the report to ease citizen concerns.  Specifically, Mr. Wehrum sent letters to Governor Bruce Rauner and several other senior elected officials specifically noting that "the air concentrations of ethylene oxide are not high enough to cause immediate harm to health for the people in and around Willowbrook."  These letters are attached as Group Exhibit F.  Further, Mr. Wehrum noted that "[e]arly indications from the post-control stack testing suggest that emissions have indeed been significantly reduced."  Mr. Wehrum also pointed out flaws underlying USEPA's recent National Air Toxics Assessment (the "2014 NATA"), which identified Willowbrook as one of a number of areas potentially having an elevated chronic risk from ethylene oxide.[8]  NATA is a screening tool used by the federal government to identify areas of the country, pollutants, or types of pollution sources that may need to be further examined to better understand potential risks to public health.  The identification of elevated risks from ethylene oxide in the 2014 NATA are primarily driven by a toxicity value taken from the 2016 IRIS assessment.  Mr. Wehrum noted that the NATA assessment's conclusion about the cancer risk of a given concentration of

---

[7] *Id.  See also 2-Butene*, NATIONAL LIBRARY OFMEDICINE TOXNET, https://toxnet.nlm.nih.gov/cgibin/ sis/search/a?dbs+hsdb:@term+@DOCNO+180 (last visited Dec. 5, 2018) ("Trans-2-butene is listed as a compound present in both gasoline and the exhaust of motor vehicles.").

[8] Although this National Air Toxics Assessment is called the "2014 NATA" because it uses emissions data from 2014, USEPA actually published the 2014 NATA in 2018.

ethylene oxide is based on "someone who is continuously exposed to [ethylene oxide] for 24 hours per day over 70 years."

16.     On September 20 and 21, 2018, a contractor hired by Sterigenics conducted stack tests to measure the actual emissions from the Willowbrook facility.  USEPA and IEPA experts were present to observe these tests.  (Ex. H at p. 91.)

17.     USEPA is currently in the process of "monitoring air near the Sterigenics facility to better understand the levels of ethylene oxide (EtO) in the air.  The first monitors will begin collecting air samples on Nov. 13, 2018."[9]  USEPA used the stack testing to select "eight locations that will provide the best picture of [ethylene oxide] concentrations in the outdoor air in the communities around the Sterigenics facility."[10]  Air samples will be collected from these locations for three full months.  USEPA states that it will evaluate the data as it becomes available and assess whether additional monitoring is necessary.[11]  USEPA will use this data to conduct a risk assessment of the Willowbrook area.  This risk assessment "will be more comprehensive than either NATA or the ASTDR analysis.  It will be similar to the types of risk assessments EPA conducts when it is reviewing its regulations for industries that emit air toxics to determine whether those rules need to be updated to improve protection of public health."[12]

---

[9] *EPA in Illinois – Outdoor Air Monitoring in the Willowbrook Community*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/il/outdoor-air-monitoring-willowbrook-community (last visited Dec. 4, 2018).

[10] *Id.*

[11] *Id.*

[12] *See Sterigenics Willowbrook Facility – Latest Update*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/il/sterigenics-willowbrook-facility-latest-update (last visited Dec. 4, 2018).

III.     **DIVERSITY JURISDICTION EXISTS.**

18.     A defendant may remove an action from state court to federal court if the action could have been brought in federal court originally.  28 U.S.C. § 1441.

19.     Federal diversity jurisdiction exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and "is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  Both prerequisites are satisfied here.

A.     **The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs.**

20.     A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[;]" only when the defendant's "assertion of the amount in controversy is challenged" do the parties need to submit proof.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *Midland Mgmt. Co. v. Am. Alternative Ins. Co.*, 132 F. Supp. 3d 1014, 1018 (N.D. Ill. 2015) (same).  The removing party is not required "to establish that it was likely that the plaintiff would obtain a judgment exceeding the amount-in-controversy requirement."  *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011).  Rather "jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000."  *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011).

21.     The nature of Plaintiff's allegations demonstrate that she seeks damages in excess of $75,000.  Plaintiff alleges that she was diagnosed with breast cancer in 2017.  (Compl. at ¶ 17.)  Plaintiff alleges that Sterigenics is responsible for causing her health problems.  (*Id.* at ¶ 18.)  According to Plaintiff, Sterigenics "has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability,

disfigurement, reduced life expectancy, and a loss of her normal life." (*Id.* at ¶¶ 79, 85, 91, 97, 105, 113, 119, 127, 133, 141, 147, 155, 161, 169, 177, 183.)

22.     Given the nature of Plaintiff's allegations and the lack of any express limitation on the amount of damages sought, the jurisdictional amount requirement is clearly satisfied by her claims.

**B.     Complete Diversity of Citizenship Exists.**

              i.     <u>The Parties are Citizens of Different States and No Proper Defendant is a Citizen of Illinois.</u>

23.     Sterigenics is a limited liability company.

24.     Where a party is a limited liability company, "[f]or diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. . . .  Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the . . . notice of removal was filed, and, if those members have members, the citizenship of those members as well." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *accord Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) ("limited liability companies are citizens of every state of which any member is a citizen.").

25.     Where a party is a corporation, "a corporation shall be deemed to be a citizen of every State . . . by which it is has been incorporated and of the State . . . where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

26.     Sterigenics is a Delaware limited liability company whose sole member is Sotera Health LLC.  (Declaration of Tiffany Ross Neumann ("Neumann Decl.") ¶ 2 (attached as Exhibit G).)

27.     Sotera Health LLC is a Delaware limited liability company whose sole member is Sotera Health Holdings, LLC.  (Neumann Decl. ¶ 4.)  Sotera Health Holdings, LLC is a Delaware limited liability company whose sole member is Sotera Health Topco, Inc.  (*Id.* at ¶ 5.)  Sotera Health Topco, Inc. is a Delaware corporation with its headquarters in Broadview Heights, Ohio.  (*Id.* at ¶ 6.)  Consequently, Sotera Health LLC is a citizen of Delaware and Ohio.  Therefore, for the purposes of diversity jurisdiction, Defendant Sterigenics is a citizen of Delaware and Ohio.

28.     Plaintiff has also named GTCR as a Defendant.  As explained *infra*, however, GTCR is fraudulently joined as a Defendant to this Action.  Fraudulently joined defendants "may be disregarded for purposes of determining diversity jurisdiction."  *Midland Mgmt. Co.*, 132 F. Supp. 3d at 1021.

29.     According to the First Amended Complaint, at the time the Action was filed and at the time of this removal, Plaintiff was and is not a citizen of Delaware or Ohio.  Rather, according to the First Amended Complaint, Plaintiff resided in or around Willowbrook, Illinois for eight years between 1984 and 1996 and now resides in Cook County, Illinois.  (Compl. at ¶ 16.)  This factual allegation demonstrates that Plaintiff resides in and intends to remain in Illinois and is domiciled in this state.  *See, e.g.*, *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012).  Domicile determines an individual's citizenship for diversity purposes.  *Id.*  Accordingly, for diversity purposes, Plaintiff is a citizen of Illinois.

30.     Because Plaintiff is a citizen of neither Ohio nor Delaware, complete diversity of citizenship exists.  *Midland Mgmt. Co.*, 132 F. Supp. 3d. at 1017 (removal based on diversity jurisdiction was proper where properly joined parties were citizens of different states).

ii.     GTCR, Bob Novak, and Roger Clark are Fraudulently Joined.

31.     Plaintiff asserts claims for negligence and willful and wanton conduct against GTCR, Bob Novak, and Roger Clark. Plaintiff also asserts claims for ultrahazardous activity/strict liability, civil battery, and public nuisance against GTCR. These claims are unsupported by any factual allegations regarding the claimed acts or omissions committed by GTCR, Bob Novak, and Roger Clark that allegedly caused Plaintiff's injuries.

32.     "Although a plaintiff is generally free to choose its own forum, a plaintiff 'may not join an in-state defendant solely for the purposes of defeating federal diversity jurisdiction.'" *Midland Mgmt. Co.*, 132 F. Supp. at 1021 (quoting *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999)). "In that case, the defendant is considered fraudulently joined, and may be disregarded for purposes of determining diversity jurisdiction." *Id.*

33.     A defendant is fraudulently joined where "there is no reasonable possibility that the plaintiff could prevail against the [in-state] defendant." *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 738 (N.D. Ill. 2011) (quotations and citations omitted). "The court may consider . . . affidavits in determining whether a party has been fraudulently joined." *Hernandez v. Home Depot, U.S.A., Inc.*, No. 05 C 5963, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006).

a.     GTCR is Fraudulently Joined.

34.     Naming GTCR as a Defendant is plainly fraudulent given that Plaintiff fails to allege that GTCR's acts or omissions actually caused *any* of Plaintiff's claimed injuries. Instead, Plaintiff relies on GTCR's alleged ownership as being equivalent to alleged evidence of liability. (Compl. at ¶¶ 21–29.) Perhaps aware of GTCR's tenuous connection to this case, Plaintiff engages in a "smoke and mirrors" approach to make up for the fact that, even by her own allegations, GTCR is utterly irrelevant to her claims. Plaintiff does this by extensively

13

discussing GTCR's alleged investment strategy and business approach, its alleged initiatives to improve Sterigenics' growth, and GTCR's alleged presence on the Sterigenics' board of directors. (*Id.* at ¶¶ 23–25, 28.) Confusingly, Plaintiff spends over a page of her First Amended Complaint recapping an alleged promotional video featuring a discussion between the GTCR Managing Director and the then-CEO of Sterigenics. (*Id.* at ¶ 26.) Although Plaintiff claims this video discusses "GTCR's significant involvement and control over Sterigenics," the quotes provided by Plaintiff belie this assertion. (*Id.*) Instead the alleged discussion highlights that GTCR does its due diligence to understand the healthcare industry, including researching contract sterilization before partnering with Sterigenics, and GTCR committed resources to acquire a supplier of Sterigenics' products. (*Id.*) These voluminous and irrelevant allegations regarding GTCR's business relationship with Sterigenics have absolutely nothing to do with Plaintiff's claims regarding exposure to ethylene oxide emitted by the Willowbrook facility and her assertion that such emissions caused her claimed injuries. Indeed, Plaintiff makes no attempt whatsoever to allege any connection between GTCR and the Willowbrook facility, the only Sterigenics facility at issue in this case. Instead Plaintiff alleges that GTCR's ownership of Sterigenics is sufficient to establish liability for Plaintiff's inhalation of ethylene oxide in Willowbrook. Plaintiff's allegations do not address, at all, what acts or omissions actually attributable to GTCR potentially caused Plaintiff's claimed injuries. This failure is fatal to any claim of actual liability against GTCR and plainly reveals this Defendant was fraudulently joined. The most Plaintiff asserts in her allegations against GTCR is that it has an agreeable business relationship with Sterigenics. This is insufficient to apprise GTCR of the nature of the charges against it and to allow it to prepare its defense as required.

14

35.     Further, Plaintiff could *never* even state a claim against GTCR as it cannot be held liable for the claims asserted.  Under the direct participant theory of liability for tortious acts of a subsidiary, a parent corporation may be held liable only if "there is sufficient evidence to show that the parent corporation directed or authorized the manner in which an activity is undertaken."  *Grady v. Ocwen Loan Servicing, LLC*, 2012 WL 929928, at *2 (N.D. Ill. Mar. 19, 2012) (citing *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007)).  In other words, direct participant liability exists only where a parent corporation engages in actions "surpassing the control exercised as a normal incident of ownership."  *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 WL 1886440, at *10 (N.D. Ill. May 22, 2012) (internal quotation marks omitted).  Notably, the First Amended Complaint makes no attempt to allege facts surpassing that of a normal ownership relationship.  Additionally, however, there are several layers of control separating GTCR's ownership from Sterigenics.  As described above, Sterigenics is a Delaware limited liability company whose sole member is Sotera Health LLC, whose sole member is Sotera Health Holdings, LLC, whose sole member is Sotera Health Topco, Inc. Sotera Health Topco, Inc. is, in turn, owned by Sotera Health Topco Parent, L.P., which is owned by dozens of limited partners.  Among those dozens of limited partners are a few funds indirectly affiliated with GTCR.  (Neumann Decl. ¶ 8.)  Thus, there are four companies separating GTCR's partial and indirect ownership interest from Sterigenics U.S. LLC.  (*Id.* at ¶ 9.)  Sterigenics, meanwhile, allegedly owns several facilities across different countries, one of which is the Willowbrook facility.  (Compl. at ¶¶ 1, 45, 67, 68.)  As is evidenced by this corporate structure, GTCR does not direct or authorize the manner in which Sterigenics U.S., LLC operates, let alone direct or authorize the activities at the Willowbrook facility.  The only facts alleged demonstrate

15

nothing more than ownership of one limited liability company by another. This indirect and partial ownership is legally insufficient to ever establish liability for Plaintiff's claims.

36.     Because Plaintiff makes no specific allegations regarding GTCR's actions or omissions that caused Plaintiff's injuries, nor could she ever truthfully make any such allegations, she cannot demonstrate that GTCR owed any legal duty to Plaintiff or could be otherwise personally liable to her.

37.     Because Plaintiff has not made *any* substantive allegations against GTCR regarding any of her actual claims, there is "no possibility that a plaintiff can state a cause of action against [this] nondiverse defendant[] in state court." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Given all of these facts, GTCR has obviously only been added to the First Amended Complaint in a blatant attempt to defeat diversity.

38.     Because no possibility exists, much less any *reasonable* possibility, that Plaintiff could state *any* claim against GTCR, this Defendant was fraudulently joined to this Action. As such, GTCR's presence as a Defendant should be ignored for purposes of determining diversity jurisdiction. *See Hernandez*, 2006 WL 1647438, at *2 (removal based on diversity of citizenship was proper where there was "no possibility" that plaintiff could state a cause of action for negligence as alleged in the complaint against the in-state defendant).

b.     Bob Novak and Roger Clark are Fraudulently Joined.

39.     Bob Novak and Roger Clark are also clearly fraudulently joined given the dearth of any factual allegations asserted against them. Indeed, in the actual body of the First Amended Complaint, Plaintiff spends just three sentences each on Bob Novak and Roger Clark. (Compl. at ¶¶ 30, 31.) Significantly, those three sentences do nothing more than provide their alleged job descriptions. (*Id.* at ¶ 30 (alleging that Bob Novak "is the Operations Manager at the"

16

Willowbrook facility, "has worked in that capacity since August 2003," and is "responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety"); *id.* at ¶ 31 (alleging that Roger Clark was "the Maintenance Supervisor at the" Willowbrook facility, "held that position for nearly 30 years from the late 1980s until approximately 2015," and "was responsible for calibrating the internal [ethylene oxide] monitors and overseeing the maintenance activities at the" Willowbrook facility).) Even within these job descriptions, Plaintiff does not specifically assert the necessary allegation that either Defendant had any control or discretion over the Willowbrook facility's ethylene oxide emissions—the alleged cause of Plaintiff's injuries.

40.    Other than asserting generalized boilerplate job descriptions for Roger Clark and Bob Novak, Plaintiff does not mention them again until the First Amended Complaint's claims sections. In those sections, Plaintiff asserts that Bob Novak and Roger Clark are individually liable for their negligence (Counts IX and XI) and willful and wanton conduct (Counts X and XII) claims. Plaintiff makes these unsupported claims even though she asserted absolutely no factual allegations regarding either Roger Clark or Bob Novak's acts or omissions that allegedly actually caused Plaintiff's claimed injuries. As such, Roger Clark and Bob Novak were clearly fraudulently joined and their presence as Defendants should be ignored for purposes of determining diversity jurisdiction. *See Hernandez*, 2006 WL 1647438, at *2.

## IV.    FEDERAL QUESTION JURISDICTION.

41.    Federal-question jurisdiction exists where a plaintiff's cause of action "arises under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. In order to arise under federal law, a claim must either plead a cause of action under federal law or plead a state-law claim that implicates significant federal issues. *See Grable & Sons Metal Prod., Inc. v.*

17

*Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). A state-law claim implicates significant federal issues if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In other words, a state-law claim may satisfy the "arising under" jurisdictional test if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314); *see also Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.,* 776 F.3d 463, 466 (7th Cir. 2015). A federal issue is substantial if it requires more than the routine application of settled federal law to a particular set of facts. *See Behrens v. BMO Harris Bank, N.A.*, No. 16-CV-09949, 2017 WL 3234373, at \*6 (N.D. Ill. July 31, 2017).

**A.    Plaintiff's First Amended Complaint Necessarily Raises a Disputed Issue of Federal Law.**

42.    The entire substance of Plaintiff's First Amended Complaint is founded on the federal government's ATSDR report entitled "Evaluation of the Inhalation Carcinogenicity of Ethylene Oxide," which, in turn, used *another* federal government agency's report (the 2016 USEPA IRIS) as the basis for its analysis and findings. In that 2016 report, USEPA changed ethylene oxide's cancer weight-of-evidence descriptor from "probably carcinogenic to humans" to "carcinogenic to humans" and "determined that there is sufficient evidence of a causal relationship between [ethylene oxide] exposure and breast cancer in women." (Ex. B, p. 1, 8, 9.)

43.    Nonetheless, at the time the report was released, and at all times before and after the report's release, Sterigenics has been in compliance with all state and federal regulatory emission requirements, most importantly the federal Clean Air Act.

18

44.     The Clean Air Act, 42 U.S.C. § 7401 *et seq*., is the primary mechanism through which the federal government manages air emissions from industrial facilities in the United States.  Among many regulatory provisions, the Clean Air Act requires USEPA to identify sources of and set national emission standards for a specific list of nearly 200 hazardous air pollutants.  42 U.S.C. § 7412.  Ethylene oxide is one of those chemicals, and pursuant to that mandate, USEPA has directly regulated ethylene oxide emissions since 1994.  *See* 40 C.F.R. § 63, Subpart O (Ethylene Oxide Emissions Standards for Sterilization Facilities); National Emission Standards for Hazardous Air Pollutants for Ethylene Oxide Commercial Sterilization and Fumigation Operations, 59 Fed. Reg. 62585-01 (Dec. 6, 1994).  The emission standards (known as "NESHAPs") are directly applicable to facilities such as Sterigenics and enforceable by USEPA.  40 C.F.R. § 63.368.  If the standards are violated, the United States has the authority to seek civil penalties of up to $97,229 per day and may obtain temporary or permanent injunctive relief.  42 U.S.C. § 7413(b); *see also* Civil Monetary Penalty Inflation Adjustment Rule, 83 Fed. Reg. 1190 (Jan. 10, 2018).

45.     The Clean Air Act also creates a nationally-uniform system of permits, known as "Title V permits," for major industrial sources to ensure that emission standards are identified and met.  40 C.F.R. § 70.1.  USEPA sets the substantive requirements for the Title V permitting program.  It also has the power to authorize individual states to administer the permitting program on USEPA's behalf.  40 C.F.R. § 70 *et seq.*  USEPA has approved Illinois's Title V permitting program, 415 ILCS 5/39.5 (known in Illinois as the Clean Air Act Permit Program ("CAAPP"); Illinois, 66 Fed. Reg. 62946 (Dec. 4, 2001) (Clean Air Act Final Full Approval of the Operating Permits Program).  Pursuant to this grant of authority, IEPA issued Sterigenics a CAAPP permit.  (Permit attached as Exhibit I.)

19

46.     Together, the dual regulations set by USEPA and IEPA limit Sterigenics' overall use of ethylene oxide and require most sources of ethylene oxide at the facility to be connected to pollution control devices, which are required to remove at least 99% of the ethylene oxide before it can be emitted to the air, pursuant to the federal NESHAP.  40 C.F.R. § 63.362(a). Sterigenics is in compliance with its CAAPP permit and the federal NESHAP and, in fact, emits far less than the permitted amount of ethylene oxide.

47.     Nonetheless, Plaintiff argues that Sterigenics breached its duty to Plaintiff by "emitting [ethylene oxide] into the air from its Willowbrook facility," "using [ethylene oxide] as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being," and "emitting excessive, unnecessary, and/or dangerous volumes of [ethylene oxide] into air from its Willowbrook facility," amongst other claims.  (Compl. at ¶ 77.)

48.     In alleging this duty, Plaintiff seeks to substitute a different standard of care for the carefully-designed emission standard for ethylene oxide that was authorized by Congress, established by USEPA, and implemented in a federally-approved CAAPP permit.  Plaintiff's First Amended Complaint is a direct challenge to both the Clean Air Act's ethylene oxide standards as well as IEPA's implementation of those standards.  Plaintiff asks the state court to ignore these uniform federal standards, and impose new and different standards primarily based on the ATSDR report.  Thus, not only does Plaintiff ask the state court to rewrite a federal regulation, she seeks to do that based on a report generated by one federal agency—ATSDR—at the behest of another federal agency—USEPA.

49.     Further, IEPA, the state regulatory agency, relies on USEPA for the proper regulation of emissions in Illinois.  According to Alec Messina, IEPA Director, "States,

including Illinois, do not have the resources or experience to develop and promulgate emissions

standards" for facilities like Sterigenics. (Ex. H at p. 97.) Instead, State EPA departments rely

on USEPA, which has superior resources such as "the ability to analyze and make risk

assessments." (*Id.*) Thus, the ultimate authority on emissions standards is USEPA and State

involvement is secondary. Allowing a State judge to adjudicate a matter that effectively

challenges USEPA authority on emissions improperly fails to acknowledge USEPA's vital role

in this case.

50.     Given Plaintiff's direct challenge to federal standards, regulations, enforcement,

and authority, as well as her reliance on federal agency opinions to state a claim, the First

Amended Complaint necessarily raises a disputed issue of federal law as to the governing

standards for ethylene oxide emissions.

**B.     Plaintiff's First Amended Complaint Raises a Substantial Federal Issue.**

51.     Plaintiff's claims are substantial because their resolution is important to the

federal system as a whole. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry

under *Grable* looks instead to the importance of the issue to the federal system as a whole.").

The federal government has a strong interest in ensuring uniformity in national air quality

standards. This interest is evidenced by the highly comprehensive and detailed regulatory

system the federal government has set forth through the Clean Air Act. Sterigenics is in

compliance with this comprehensive and detailed federal regulatory system. Plaintiff, however,

is attempting to bypass this federal system and separately regulate Sterigenics' conduct, conduct

that is in conformance with federal and state environmental laws. Curiously, Plaintiff's proposed

regulations are taken from assessments issued by federal bodies—ATSDR and USEPA's IRIS

program.

21

52.     Notably, the standard of care outlined in both the ATSDR report and the IRIS assessment is at odds with USEPA's federal regulations.  Perhaps most troubling is the fact that USEPA created the IRIS risk assessment.  Ethylene oxide emitters are receiving inconsistent messages from *the same federal agency*.[13]  Thus, Plaintiff's case presents an issue that cries out for federal, not state, jurisdiction.  Overall, the federal government's direct and substantial interest in this matter demonstrates it is an important issue of federal law that belongs in this Court.

**C.     Resolution of this Substantial Federal Issue in This Court Is Not Disruptive.**

53.     Finally, this case does not present issues traditionally regulated by the States.  *See Gunn*, 568 U.S. at 264 (denying removal of a legal malpractice case based, in part, on the fact that States "have a special responsibility for maintaining standards among members of the licensed professions") (internal quotation mark omitted).  Instead, Plaintiff's case is premised on inconsistent *federal* messages, which the State of Illinois has no particular interest in resolving. In fact, IEPA acknowledged Illinois does not even have the resources to get involved in promulgating emissions standards, and therefore is wholly reliant on USEPA to act as the expert in this area.  (Ex. H at p. 97.)

54.     More to the point, U.S. Senators Tammy Duckworth and Dick Durbin along with U.S. Representatives Brad Schneider, Dan Lipinski, and Bill Foster have introduced a bill that would require the USEPA to revise ethylene oxide emissions standards for medical sterilization

---

[13] Note also that according to Alec Messina, IEPA Director, "there is some question as to [even] whether there is complete agreement within U.S. EPA, frankly, as . . . [to] what those studies show, whether the studies were designed in such a fashion as to have something that was valuable and worthwhile and could be conveyed."  (Ex. H at p. 104.)

and chemical facilities.[14]  Finally, U.S. Senators Tammy Duckworth and Dick Durbin, along

with U.S. Representatives Bill Foster and Brad Schneider, have urged the FDA—another *federal*

agency charged with promulgating rules affecting contract sterilizers like Sterigenics—to

convene an interagency taskforce to immediately begin investigating alternatives to ethylene

oxide, thus driving home the point that this is inherently a federal issue with respect to which the

State of Illinois has neither a particular interest in nor the power to resolve.[15]  Consequently,

Plaintiff's claims are "capable of resolution in federal court without disrupting the federal-state

balance approved by Congress."  *Gunn*, 568 U.S. at 258.

55.    Because this case meets the arising under standards set by the Supreme Court in

*Grable*, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

## V.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

56.    This Court is the proper venue for this Action, because it is pending in the Circuit

Court for Cook County, Illinois, and the United States District Court for the Northern District of

Illinois is the federal court district embracing the geographic place where the Action is pending.

28 U.S.C. §§ 93(a)(1), 1441(a), 1446(a).

57.    Defendant GTCR was served with the First Amended Complaint on December 3,

2018.  Defendant Sterigenics was served with the First Amended Complaint on December 5,

2018.  Therefore, this Notice of Removal is timely under 28 U.S.C. § 1446(b).  *See Murphy*

---

[14] *Press Release: Durbin, Schneider, Duckworth, Lipinski, Foster Introduce Bill To Require EPA To Revise Standards For Ethylene Oxide Emissions*, THE OFF. OF SENATOR DURBIN, https://www.durbin.senate.gov/ newsroom/press-releases/durbin-schneider-duckworth-lipinski-foster-introduce-bill-to-require-epa-to-revise-standards-for-ethylene-oxide-emissions- (last visited Dec. 4, 2018).

[15] *Letter to Honorable Scott Gottlieb*, THE OFF. OF SENATOR DUCKWORTH, https://www.duckworth.senate.gov/imo /media/doc/18.11.20%20-%20Letter%20to%20FDA%20re%20Ethylene%20Oxide%20-%20 Duckworth%20Durbin%20Foster%20Schneider.pdf (last visited Dec. 4, 2018).

*Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day time limit for removal runs from date of formal service of the complaint).

58.    In compliance with 28 U.S.C. § 1446(a), this Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

59.    No consent is needed from Defendants GTCR, Bob Novak, and Roger Clark because they are fraudulently joined. *Hernandez*, 2006 WL 1647438, at *2 (fraudulently joined defendants do not need to consent to removal); *see also* 28 U.S.C. § 1446(b)(2)(A) (only "defendants who have been properly joined and served must join in or consent to the removal"). Nonetheless, GTCR, Bob Novak, and Roger Clark consent to removal.

60.    No Defendant properly joined to this case is a citizen of the State of Illinois, the state where the Action was initially filed.  28 U.S.C. § 1441(b)(2); *Midland Mgmt. Co.*, 132 F. Supp. 3d at 1023–24 (presence of fraudulently joined in-state defendant did not "compromise the parties' complete diversity" and did not violate the forum defendant rule).

61.    Pursuant to 28 U.S.C. § 1446(d), Sterigenics will promptly file a removal notice with the Clerk of the Circuit Court of Cook County, Illinois, and will serve written notice of the same upon counsel of record for Plaintiff.

62.    If any questions arise about this removal, Sterigenics respectfully requests the opportunity to present briefing and oral argument in support of removal, and to conduct jurisdictional discovery, if needed.

63.    By filing this notice of removal, Sterigenics does not waive, either expressly or implicitly, its rights to assert any defense or other objection that it could have asserted in the Circuit Court of Cook County of Illinois, including, without limitation, those related to personal jurisdiction, inconvenience of the forum, venue, or joinder.

## REQUESTED RELIEF

WHEREFORE, Defendant Sterigenics U.S., LLC ("Sterigenics"), respectfully requests that this Court assume jurisdiction over this action.

Date:  December 7, 2018                              Respectfully submitted,

                                                    By:  /s/ *Maja C. Eaton*
                                                          Maja C. Eaton

                                                          Maja C. Eaton
                                                          meaton@sidley.com
                                                          Gerard D. Kelly
                                                          gkelly@sidley.com
                                                          Elizabeth M. Chiarello
                                                          echiarello@sidley.com
                                                          Michael L. Lisak
                                                          mlisak@sidley.com
                                                          Stephanie C. Stern
                                                          sstern@sidley.com
                                                          SIDLEY AUSTIN LLP
                                                          Firm ID No. 42418
                                                          One South Dearborn Street
                                                          Chicago, Illinois  60603
                                                          Telephone: (312) 853-7000
                                                          Facsimile:  (312) 853-7036

                                                          ***ATTORNEYS FOR
                                                          STERIGENICS US, LLC, BOB
                                                          NOVAK, AND GTCR, LLC***

**12-Person Jury**

FILED
10/17/2018 9:11 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| ANITA GOVIC, | ) | |
| | ) | |
| | ) | Case No. **2018L011252** |
| Plaintiff, | ) | |
| | ) | **JURY DEMANDED** |
| v. | ) | |
| | ) | |
| STERIGENICS INTERNATIONAL, | ) | |
| INC.; STERIGENICS | ) | |
| INTERNATIONAL LLC; | ) | |
| STERIGENICS U.S., LLC; BOB | ) | |
| NOVAK; DANIEL GIBALA; and | ) | |
| GTCR, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT AT LAW

---

Plaintiff, ANITA GOVIC, by and through counsel, Romanucci & Blandin, LLC, and Hart McLaughlin & Eldridge, LLC, states as follows for her complaint against Defendants STERIGENICS INTERNATIONAL, INC., STERIGENICS INTERNATIONAL LLC, STERIGENICS U.S. LLC (collectively "Sterigenics"), BOB NOVAK, DANIEL GIBALA, and GTCR, LLC:

1

FILED DATE: 10/17/2018 9:11 AM   2018L011252

## INTRODUCTION

For decades, tens of thousands of people have lived in the quiet suburbs of Cook and DuPage County: Willowbrook, Burr Ridge, Darien, and Hinsdale with the false belief that they had found a sanctuary from the busy streets of Chicago. Just 25 miles southwest of Chicago, the third largest city in America, the area is a disaster zone. It is America's Chernobyl. In 1984, a company called Sterigenics infiltrated the Willowbrook community and began emitting an invisible, cancer causing toxin, ethylene oxide. In 2011, this company was purchased by a Cook County Hedge Fund, GTCR, LLC. The emissions continued. It was not until August 21, 2018, when the U.S. Department of Health & Human Services released a report, that the veil was finally lifted on the staggering cancer statistics and other ailments running rampant in these quiet communities. With the cancer-causing effects of ethylene oxide being studied since the 1940s, America's Chernobyl has been nearly 80 years in the making and it affects our children, our parents, and our grandparents. This is about the children our community may never have. It is about lives cut short, dreams destroyed, and memories never made.

## OVERVIEW

1. Since 1984, Sterigenics has been emitting ethylene oxide ("EtO"), a known carcinogen, into the air from its facility located in Willowbrook, Illinois. As a result, for the last 34 years, those who live and work in Willowbrook and the surrounding area have unknowingly been inhaling EtO in the air they breathe on a routine and continuous basis.

2

2.     Sterigenics never informed the residents of the Willowbrook community or those who live or work nearby that it systematically emits EtO into the air, nor did Sterigenics warn them that they were and continue to routinely and continuously breathing in a known carcinogen.

3.     On or about August 21, 2018, an "Evaluation of Potential Health Impacts for Ethylene Oxide Emissions" prepared by the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry (hereinafter "ATSDR"), was released to the general public.[1] The ATSDR report was based upon air measurements of EtO collected in May 2018 from 29 discrete locations near the Sterigenics facility in Willowbrook.

4.     Relative to the Sterigenics facility in Willowbrook, the ATSDR concluded that "residents and workers are exposed to elevated airborne EtO concentrations from facility emissions." The ATSDR further concluded that "*an elevated cancer risk exists* for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility," and that "[t]hese elevated risks *present a public health hazard to these populations*." Among other things, the ATSDR Evaluation "recommends that Sterigenics take *immediate action* to reduce EtO emissions at this facility."

5.     According to the EPA, the upper limit of acceptable cancer risk for airborne toxins, such as EtO, is 1 in 10 thousand (or 100 in 1 million). In other words, according to the EPA, it "will generally presume that if the risk to that individual is

---

[1] https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf

3

no higher than approximately 1 in 10 thousand, that risk level is considered acceptable . . ."[2]

6.     Based upon the EPA's 2014 National Air Toxics Assessment, there are 106 census tracts in the United States with cancer risk scores greater than the acceptable limits. Most of those 106 tracts are located in "Cancer Alley," which is a notorious area along the Mississippi River between Baton Rouge and New Orleans with numerous industrial plants.

7.     According to the EPA's 2014 measurements, the immediate area in DuPage County surrounding the Sterigenics facility in Willowbrook, referred to as Tract 17043845902, has a cancer risk of 281.8075 in 1 million—which is nearly three times higher than the EPA's acceptable limits.

8.     To put this into further context, the EPA's 2014 National Air Toxics Assessment documented cancer risks in **76,727** census tracts across the country. The Willowbrook Tract, 1704385902, has the highest cancer risk in Illinois and the nineteenth (19th) highest cancer risk in the United States. In other words, the Willowbrook Tract is in the top 99.98% tracts in terms of cancer risk in the country.

9.     Figure 1, below, identifies the nineteen census tracts in the United States with the highest cancer risk. Twelve are located along Cancer Alley. Five tracts have sterilization plants, such as Sterigenics, that emit massive amounts of EtO. In fact, sterilization plants are almost entirely responsible for causing the

---

[2] https://www.epa.gov/national-air-toxics-assessment/nata-frequent-questions

4

FILED DATE: 10/17/2018 9:11 AM   2018L011252

extraordinarily high cancer risks in DuPage County, Illinois, Jefferson County, Colorado, and Lehigh County, Pennsylvania.

### Figure 1

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | State | EPA Region | County | FIPS | Tract | Population | Total Cancer Risk (per million) |
| 2 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070800 | 2,537 | 1,505.1167 |
| 3 | LA | EPA Region 6 | St. Charles | 22089 | 22089060100 | 1,937 | 808.7227 |
| 4 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070900 | 3,115 | 616.6193 |
| 5 | PA | EPA Region 3 | Lehigh | 42077 | 42077005902 | 1,571 | 596.4609 |
| 6 | CO | EPA Region 8 | Jefferson | 08059 | 08059010902 | 2,310 | 525.5596 |
| 7 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070700 | 4,348 | 511.3240 |
| 8 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071000 | 2,840 | 490.2785 |
| 9 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095000000 | 45,924 | 413.3152 |
| 10 | WV | EPA Region 3 | Kanawha | 54039 | 54039013400 | 2,222 | 366.6597 |
| 11 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071100 | 3,398 | 363.1912 |
| 12 | TX | EPA Region 6 | Harris | 48201 | 48201343100 | 4,629 | 348.2016 |
| 13 | PA | EPA Region 3 | Lehigh | 42077 | 42077000101 | 3,661 | 346.5181 |
| 14 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070500 | 6,229 | 329.2657 |
| 15 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070100 | 2,685 | 303.0079 |
| 16 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070300 | 6,258 | 296.3112 |
| 17 | TX | EPA Region 6 | Harris | 48201 | 48201343200 | 4,944 | 296.1831 |
| 18 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070400 | 4,381 | 286.5417 |
| 19 | LA | EPA Region 6 | St. Charles | 22089 | 22089062700 | 4,753 | 284.5145 |
| 20 | IL | EPA Region 5 | DuPage | 17043 | 17043845902 | 3,411 | 281.8075 |

10.    With particular respect to the Willowbrook Tract, 88.98% of the elevated cancer risk is attributed to EtO emissions; and the only facility in the Willowbrook Tract emitting EtO is Sterigenics. As a result, Sterigenics alone is almost entirely responsible for the Willowbrook Tract having the 19th highest cancer risk in the country.

11.    Most troubling is that only one facility in the entire country emits more EtO than the Sterigenics facility in Willowbrook.

12.    The data cited above, specifically in Paragraphs 6 through 11, is based on sampling from 2014. More recent data, however, reveals that the cancer risk in Willowbrook is far higher than previously determined. In May 2018, air samples were

FILED DATE: 10/17/2018 9:11 AM   2018L011252

taken and analyzed from the area surrounding the Sterigenics facility in Willowbrook. Those samples revealed a **current** cancer risk of 6,400 in 1 million (or 64 in 10 thousand), which is **64 times the acceptable limit**.

13.     As a direct and proximate result of Sterigenics' emissions of EtO over the course of the last 34 years, the Willowbrook community has become one of the most toxic and one of the most dangerous communities from a health and well-being standpoint in the entire country. Those who live and work in the Willowbrook area have been victimized by Sterigenics' negligent acts and omissions, as well as its conscious disregard and utter indifference to human life and the health and well-being of those in the community.

14.     Neither the extent of Sterigenics' EtO emissions nor the impact of those emissions on the health and well-being of those who live and work in the Willowbrook area was known by the general public until the August 21, 2018 release of the ATSDR report and the August 22, 2018 release of EPA's 2014 National Air Toxics Assessment.

## PARTIES

15.     Plaintiff, Anita Govic, is 48 years old. Ms. Govic lived approximately 1.5 miles from the Sterigenics facility in Willowbrook, Illinois for approximately 8 years between 1984 and 1996, while also attending Hinsdale South High School from 1984-1988, located approximately 1 mile from the same facility. Despite now living in Cook County, Illinois, Ms. Govic has continued visiting her family at the same location, approximately 1.5 miles from the facility from 1996 up until the present day.

16.     In 2017, Ms. Govic was officially diagnosed with Breast cancer in Chicago, Cook County, Illinois. The vast majority of Ms. Govic's treatment has occurred in Cook County, Illinois.

17.     Ms. Govic did not have notice that her cancer was wrongfully caused or that it was caused by Sterigenics' emissions of EtO until the recent ATSDR report was released in August 2018.

18.     Sterigenics International, Inc. and Sterigenics International, LLC provide contract sterilization services across the world. Together they operate 46 facilities in 13 countries.

19.     In 2011, Sterigenics International, Inc. was purchased for $675 million by the Chicago-based private equity firm, GTCR, LLC. The Chairman of GTCR in 2011 was Governor Bruce Rauner.

20.     Subsequently, in 2017, Sterigenics International LLC announced that it had changed its parent name to Sotera Health LLC. Sotera Health LLC is also owned in part by GTCR, Governor Rauner's former equity firm.

21.     Sterigenics U.S., LLC, is a publicly-traded subsidiary of Sotera Health LLC, with its headquarters and principal place of business located at 2015 Spring Road, Suite 650, Oak Brook, Illinois 60523.

22.     At all times relevant for the time period referenced herein, GTCR, LLC, owned, operated, managed, and/or maintained Sterigenics, with its principal place of business at 300 N. LaSalle Street, Suite 5600, Chicago, Cook County, IL.

FILED DATE: 10/17/2018 9:11 AM 2018L011252

23.     Sterigenics operates two buildings in Willowbrook. Building One is located at 7775 S. Quincy Street and Building Two is located at 830 Midway Drive.

24.     During the times relevant for the time period referenced herein, Sterigenics operated another facility at 711 Cooper Court, Schaumburg, Cook County, Illinois.

25.     Bob Novak is the Operations Manager at the Sterigenics facility in Willowbrook, and has worked in that capacity since August 2003. He is responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety.

26.     Daniel Gibala is the Ethylene Oxide Validation Coordinator at the Sterigenics facility in Willowbrook, and has worked in that capacity since July 2013. He is responsible for validating and revalidating the sterilization process at the Sterigenics' facility.

27.     Upon information and belief, Daniel Gibala is a Cook County resident, residing in Mount Prospect, Illinois.

### VILLAGE OF WILLOWBROOK

28.     The Village of Willowbrook is a suburban community located roughly 20 miles southwest of Chicago. Its population is approximately 8,500. The Village owns and operates over 54 acres of parks on 10 separate sites throughout the Village.

29.     The two Sterigenics buildings in Willowbrook—Building One and Building Two—are both located in a densely populated metropolitan area with 19,271 people living within one mile.

8

FILED DATE: 10/17/2018 9:11 AM  2018L011252

30.     Gower Middle School in Burr Ridge is located 0.7 miles from the Sterigenics facility, and has an enrollment of approximately 400 students. Gower West Elementary School is 0.9 miles from the Sterigenics facility. Conev's Cradle Infant Care, Inc., is a daycare center located 0.7 miles from the Sterigenics facility. Hinsdale South High School, with an enrollment of 1,500 students, is located 1.1 miles from the Sterigenics facility.

31.     The Willowbrook Police Department, with its 23 full-time sworn police officers and three civilian employees, is located a mere 495 feet from the Sterigenics facility. Willowbrook's Village Office and City Hall is located 0.2 miles from the Sterigenics facility.

32.     The Willowbrook Community Park is 0.6 miles from the Sterigenics facility. And there are highly dense residential areas to the immediate west of the Sterigenics facility within 0.3 miles, to the southeast within 0.6 miles, to the southwest within 0.9 miles, to the north within 0.7 miles, to the northeast within 0.8 miles, and to the east within 1.0 mile.

33.     Willowbrook Town Center, which is located 1.1 miles from the Sterigenics facility, has nearly 200,000 square feet of retail stores, restaurants, and other businesses. There are 91,000 residents within a three-mile radius of the Willowbrook Town Center, and an additional 33,000 people employed in the area's 3,000-plus businesses.

***

34.     Figure 2, below, depicts the area within a 1.5 mile radius of the Sterigenics facility.

**Figure 2**



## ETHYLENE OXIDE

35.     The DNA damaging properties of EtO have been studied since the 1940s, and for more than 40 years it has been consistently recognized as dangerous, toxic, and carcinogenic.

36.     In a 1977 report, the National Institute for Occupational Safety and Health ("NIOSH") concluded that occupational exposure to EtO may increase the frequency of mutations in human populations and recommended that EtO be considered as mutagenic and potentially carcinogenic to humans. Given EtO's carcinogenic potential, the 1977 NIOSH report also recommended that alternative sterilization processes be used whenever available.

FILED DATE: 10/17/2018 9:11 AM   2018L011252

FILED DATE: 10/7/2018 9:11 AM   2018L011252

37.     In 1981, NIOSH released a new bulletin focusing on new evidence of carcinogenic, mutagenic, and reproductive hazards associated with EtO. It also reiterated that EtO was a potential occupational carcinogen and reported that no safe levels of EtO exposure have been demonstrated.

38.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as *reasonably anticipated to be a human carcinogen*.

39.     In 2000, the U.S. Department of Health and Human Services published the Ninth Annual Report on Carcinogens and revised its classification for EtO to *known to be a human carcinogen*.

40.     The World Health Organization's International Agency for Research on Cancer has also elevated EtO to a Group 1 carcinogen, finding, "Ethylene Oxide is carcinogenic to humans."

41.     In 2016, the U.S. EPA's Integrated Risk Information System (IRIS) increased the cancer potency of EtO by 30 times.

42.     The half-life of EtO in the atmosphere has been reported in certain circumstances to be two-hundred eleven (211) days. Neither rain nor absorption into aqueous aerosols is capable of removing ethylene oxide from the atmosphere.

43.     Acute exposure to EtO can result in nausea, vomiting, neurological disorders, bronchitis, pulmonary edema, and emphysema.

44.    Chronic exposure to EtO can irritate the eyes, skin, nose, throat, lungs, and can cause harm to the brain and nervous system leading to headaches, nausea, memory loss, and numbness.

45.    Chronic inhalation exposure to EtO can also cause reproductive and developmental impairments. Evidence recognized by the EPA indicates that inhalation exposure to EtO can cause an increased rate of miscarriages in females. Evidence also indicates that EtO inhalation exposure can cause decreased sperm concentration and testicular degeneration.

46.    Additionally, inhalation exposure to EtO can cause mutations and chromosomal damage that can lead to birth defects and cancer. Even when exposure to EtO diminishes or ceases, the frequency of sister chromatid exchanges (mutations/chromosomal alterations) have been found to remain elevated for at least six months.

47.    Chronic inhalation exposure to EtO also causes cancer. Evidence recognized by the EPA indicates that inhalation exposure to EtO causes lymphatic cancers, leukemia, and Breast cancer. There is also evidence that EtO causes brain cancer, lung cancer, and uterine cancer. **As a result, the EPA has concluded that EtO is carcinogenic to humans by the inhalation route of exposure.** The stated confidence in this classification is "HIGH."

## STERIGENICS' OPERATIONS

48.    Sterigenics and its predecessors have been releasing EtO into the air in the Willowbrook area since 1984. The facility stores EtO and sprays it into gas

FILED DATE: 10/17/2018 9:11 AM   2018L011252

chambers to sterilize medical equipment and pharmaceuticals. Building One of the Sterigenics facility, which was constructed in 1984, holds fifteen gas chambers, while Building Two, which was constructed in 1999, holds four gas chambers. Vents on the gas chambers have been and, upon information and belief, remain uncontrolled. This means that EtO is released from the nineteen gas chambers, through the vents, and into the Willowbrook air without any pollution controls.

49.　　The Sterigenics facility operates 24 hours per day, which means toxic, cancerous gas is emitted from the Sterigenics facility on a steady and continuous basis. As a result, EtO is a constant element in the air breathed by those who live and work near the Willowbrook facility.

50.　　From 1995 through 2016, the reported EtO emissions from the Sterigenics facility are depicted in Figure 3, below:

**Figure 3**

| Year | Pounds | Year | Pounds |
|------|--------|------|--------|
| 1995 | 18,213 lbs. | 2006 | 3,985 lbs. |
| 1996 | 22,000 lbs. | 2007 | 3,698 lbs. |
| 1997 | 26,000 lbs. | 2008 | 3,597 lbs. |
| 1998 | 31,000 lbs. | 2009 | 3,429 lbs. |
| 1999 | 1,440 lbs. | 2010 | 6,869 lbs. |
| 2000 | 7,341 lbs. | 2011 | 6,878 lbs. |
| 2001 | 7,848 lbs. | 2012 | 6,811 lbs. |
| 2002 | 6,686 lbs. | 2013 | 5,892 lbs. |
| 2003 | 6,630 lbs. | 2014 | 5,036 lbs. |
| 2004 | 5,039 lbs. | 2015 | 4,706 lbs. |
| 2005 | 2,621 lbs. | 2016 | 4,009 lbs. |

51.　　No data on ambient air emissions was kept before 1995. Therefore, from 1984 to 1994, it is not definitively known without discovery from Sterigenics as to

FILED DATE: 10/17/2018 9:11 AM 2018L011252

how many pounds of EtO Sterigenics released into the air. However, in the few years thereafter, from 1995 to 1998, Sterigenics released an average of 24,203 pounds of EtO into the atmosphere from its Willowbrook facility. It is therefore reasonable to conclude that the pre-1995 emissions of EtO were similar to those from 1995 to 1998.

52.     At all relevant times, Sterigenics has known or should have known that EtO is toxic and dangerous to human health and well-being. In addition, at all relevant times, Sterigenics has known or should have known that EtO is classified as a carcinogen and has been determined to cause various illnesses and ailments including, but not limited to, cancer.

53.     Sterigenics has also been the subject of regulatory and administrative enforcement relative to its EtO emissions. Beginning in 1992, Sterigenics operated a sterilization facility in Zoetermeer, a city in the western Netherlands. The Zoetermeer facility was located in an area with residential housing and numerous small business. In 2009, it was determined that Sterigenics had been knowingly releasing too much EtO into the air for a number of years and was penalized. Sterigenics, however, continued with its excessive emissions until it was ultimately shut down in 2010. According to the Public Prosecutor in Zoetermeer, Sterigenics knew of the unauthorized emissions, but failed to act and did not warn local residents about the emissions or the dangers associated therewith.

54.     On or about October 7, 2013, Sterigenics released ethylene glycol (which is made from EtO) into the soil and groundwater at its Willowbrook facility. In addition, on October 21, 2013, Sterigenics reported the uncontrolled release of 30

FILED DATE: 10/17/2018 9:11 AM    2018L011252

pounds of ethylene oxide into the air from its Willowbrook facility. The Illinois Attorney General filed a lawsuit against Sterigenics for its water and air pollution and alleged numerous violations of environmental statutes and regulations. Sterigenics entered into a consent order whereby it agreed to pay a $50,000.00 fine.

55.    Notwithstanding Sterigenics' knowledge concerning the dangers of operation, it has been emitting EtO from its facility in Willowbrook on a routine and constant basis for 34 years. Further, notwithstanding Sterigenics' knowledge that chronic inhalation exposure to EtO causes adverse conditions to the eyes, skin, nose, throat, lungs, and nervous system, reproductive and developmental impairments, mutations, chromosomal damage, birth defects, and cancer, it has failed to warn those who live and work in the Willowbrook area that they are being exposed to and breathing in EtO on a routine and constant basis.

## COUNT I
### Negligence – Sterigenics International, Inc.

56.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 56.

57.    Sterigenics International, Inc. owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

58.    Sterigenics International, Inc. managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

FILED DATE: 10/17/2018 9:11 AM   2018L011252

59. Sterigenics International, Inc. had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

60. At all relevant times, Sterigenics International, Inc. knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

61. Sterigenics International, Inc. breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

  a. By emitting EtO into the air from its Willowbrook facility;

  b. By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

  c. By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

  d. By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

  e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

  f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

16

g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

62. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

63. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

17

FILED DATE: 10/17/2018 9:11 AM   2018L011252

## COUNT II
### Willful and Wanton Conduct – Sterigenics International, Inc.

64.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 57 and 58 as if fully set forth as Paragraph 64.

65.     Sterigenics International, Inc. had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

66.     At all relevant times, Sterigenics International, Inc. knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

67.     Sterigenics International, Inc. breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

a. By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

b. By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

c. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were

FILED DATE: 10/17/2018 9:11 AM  2018L011252

breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e. By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

68. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

69. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

FILED DATE: 10/17/2018 9:11 AM   2018L011252

## COUNT III
### Ultrahazardous Activity / Strict Liability – Sterigenics International, Inc.

70.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 57 and 58 as if fully set forth as Paragraph 70.

71.    Sterigenics International, Inc.'s use and emission of EtO from its Willowbrook facility constitutes an ultrahazardous activity.

72.    Sterigenics International, Inc.'s use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

73.    Sterigenics International, Inc.'s use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

74.    While the activities conducted by Sterigenics International, Inc. are exceedingly dangerous, it offers little to no value to the surrounding community.

75.    Because the activities of Sterigenics International, Inc. are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

76.    As a direct and proximate result of Sterigenics International, Inc.'s ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

77.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT IV
### Civil Battery – Sterigenics International, Inc.

78.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 57 and 58 as if fully set forth as Paragraph 78.

79.     At all relevant times, Sterigenics International, Inc. knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

80.     Notwithstanding this knowledge, Sterigenics International, Inc. caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

81.     Plaintiff's contact with EtO was offensive and harmful.

82.     Sterigenics International, Inc. intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

83.     Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

84.     As a direct and proximate result of Sterigenics International, Inc.'s emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby

exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

85.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

### COUNT V
### Public Nuisance – Sterigenics International, Inc.

86.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 57 and 58 as if fully set forth as Paragraph 86.

87.     The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

88.     Sterigenics International, Inc.'s use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics International, Inc. has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

22

89. Sterigenics International, Inc.'s use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

90. As a result of Sterigenics Interntational, Inc.'s use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

91. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT VI
### Negligence – Sterigenics International LLC

92. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 92.

93. Sterigenics International LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

94. Sterigenics International LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

FILED DATE: 10/17/2018 9:11 AM    2018L011252

FILED DATE: 10/17/2018 9:11 AM    2018L011252

95.     Sterigenics International LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

96.     At all relevant times, Sterigenics International LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

97.     Sterigenics International LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a.  By emitting EtO into the air from its Willowbrook facility;

b.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

c.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d.  By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

FILED DATE: 10/17/2018 9:11 AM  2018L011252

g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

98. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

99. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

FILED DATE: 10/17/2018 9:11 AM    2018L011252

## COUNT VII
### Willful and Wanton Conduct – Sterigenics International LLC

100.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 93 and 94 as if fully set forth as Paragraph 100.

101.    Sterigenics International LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

102.    At all relevant times, Sterigenics International LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

103.    Sterigenics International LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were

26

FILED DATE: 10/17/2018 9:11 AM  2018L011252

breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e. By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

104.  As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

105.  As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

FILED DATE: 10/17/2018 9:11 AM   2018L011252

## COUNT VIII
### Ultrahazardous Activity / Strict Liability – Sterigenics International LLC

106.  Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 93 and 94 as if fully set forth as Paragraph 106.

107.  Sterigenics International LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

108.  Sterigenics International LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

109.  Sterigenics International LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

110.  While the activities conducted by Sterigenics International LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

111.  Because the activities of Sterigenics International LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

112.  As a direct and proximate result of Sterigenics International LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

113.  As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

28

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

### COUNT IX
### Civil Battery – Sterigenics International LLC

114. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 93 and 94 as if fully set forth as Paragraph 114.

115. At all relevant times, Sterigenics International LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

116. Notwithstanding this knowledge, Sterigenics International LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

117. Plaintiff's contact with EtO was offensive and harmful.

118. Sterigenics International LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

119. Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

120. As a direct and proximate result of Sterigenics International LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby

FILED DATE: 10/17/2018 9:11 AM 2018L011252

exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

121.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

### COUNT X
### Public Nuisance – Sterigenics International LLC

122.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 93 and 94 as if fully set forth as Paragraph 122.

123.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

124.    Sterigenics International LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics International LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

30

FILED DATE: 10/17/2018 9:11 AM 2018L011252

125.    Sterigenics International LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

126.    As a result of Sterigenics International LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

127.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact

## COUNT XI
### Negligence – Sterigenics U.S., LLC

128.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 128.

129.    Sterigenics U.S., LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

130.    Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

131. Sterigenics U.S., LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

132. At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

133. Sterigenics U.S., LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

 a. By emitting EtO into the air from its Willowbrook facility;

 b. By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

 c. By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

 d. By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

 e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

 f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

 g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

FILED DATE: 10/17/2018 9:11 AM    2018L011252

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

134. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

135. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XII
### Willful and Wanton Conduct – Sterigenics U.S., LLC

136. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 129 and 130 as if fully set forth as Paragraph 136.

33

FILED DATE: 10/17/2018 9:11 AM   2018L011252

137.   Sterigenics U.S., LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

138.   At all relevant times, Sterigenics U.S., LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

139.   Sterigenics U.S., LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.   By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.   By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c.   By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.   By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    e.   By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

140. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

141. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XIII
### Ultrahazardous Activity / Strict Liability – Sterigenics U.S., LLC

142. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 129 and 130 as if fully set forth as Paragraph 142.

143. Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

FILED DATE: 10/17/2018 9:11 AM  2018L011252

FILED DATE: 10/17/2018 9:11 AM 2018L011252

144. Sterigenics U.S., LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

145. Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

146. While the activities conducted by Sterigenics U.S., LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

147. Because the activities of Sterigenics U.S., LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

148. As a direct and proximate result of Sterigenics U.S., LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

149. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

36

## COUNT XIV
### Civil Battery – Sterigenics U.S., LLC

150. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 129 and 130 as if fully set forth as Paragraph 150.

151. At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

152. Notwithstanding this knowledge, Sterigenics U.S., LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

153. Plaintiff's contact with EtO was offensive and harmful.

154. Sterigenics U.S., LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

155. Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

156. As a direct and proximate result of Sterigenics U.S., LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

157. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

FILED DATE: 10/17/2018 9:11 AM  2018L011252

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XV
### Public Nuisance – Sterigenics U.S., LLC

158.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 129 and 130 as if fully set forth as Paragraph 158.

159.   The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

160.   Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

161.   Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

162.   As a result of Sterigenics U.S., LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

163. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XVI
### Negligence – Bob Novak

164. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 164.

165. Since August 2003, Bob Novak has been the Operations Manager at the Sterigenics facility in Willowbrook.

166. In that capacity, Bob Novak has been responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety.

167. At all relevant times, Bob Novak had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

168. At all relevant times, Bob Novak knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a

FILED DATE: 10/17/2018 9:11 AM 2018L011252

toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

169. Bob Novak breached his duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a. By emitting and/or permitting emissions of EtO into the air from the Sterigenics facility in Willowbrook;

b. By emitting and/or permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook;

c. By using EtO as part of Sterigenics' sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that Sterigenics was emitting a known carcinogen into the air from its facility in Willowbrook;

g. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

h. By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the quality of air;

i. By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the

FILED DATE: 10/17/2018 9:11 AM 2018L011252

health and well-being of those who live and work in the Willowbrook community; and

j.   By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

170.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

171.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against BOB NOVAK in an amount be determined by a trier of fact.

## COUNT XVII
### Willful and Wanton Conduct – Bob Novak

172.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 165 and 166 as if fully set forth as Paragraph 172.

173.   At all relevant times, Bob Novak had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

41

FILED DATE: 10/17/2018 9:11 AM    2018L011252

174.  At all relevant times, Bob Novak knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

175.  Bob Novak breached his duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting and/or permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    c.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.  By emitting and/or permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

    e.  Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

    f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

176.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

177.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against BOB NOVAK in an amount be determined by a trier of fact.

## COUNT XVIII
### Negligence – Daniel Gibala

178.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 178.

179.    Since July 2013, Daniel Gibala has been the Ethylene Oxide Validation Coordinator at the Sterigenics facility in Willowbrook.

180.    In that capacity, Daniel Gibala has been responsible for validating and revalidating the sterilization process at the Sterigenics facility in Willowbrook, which would include testing and analysis to determine the nature and extent of EtO emissions.

FILED DATE: 10/17/2018 9:11 AM   2018L011252

181.   At all relevant times, Daniel Gibala had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

182.   At all relevant times, Daniel Gibala knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

183.   Daniel Gibala breached his duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a.  By permitting emissions of EtO into the air from the Sterigenics facility in Willowbrook;

    b.  By permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook;

    c.  By using EtO as part of Sterigenics' sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

    d.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

    e.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

    f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that Sterigenics was emitting a known carcinogen into the air from its facility in Willowbrook;

g. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

h. By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the quality of air;

i. By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

j. By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

184.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

185.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against DANIEL GIBALA in an amount be determined by a trier of fact.

## COUNT XIX
### Willful and Wanton Conduct – Daniel Gibala

186.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 179 and 180 as if fully set forth as Paragraph 186.

45

FILED DATE: 10/17/2018 9:11 AM  2018L011252

187.    At all relevant times, Daniel Gibala had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

188.    At all relevant times, Daniel Gibala knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

189.    Daniel Gibala breached his duty and was guilty of willful and wanton conduct in one or more of the following ways:

a.  By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

b.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

c.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d.  By permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

FILED DATE: 10/17/2018 9:11 AM 2018L011252

    e.  Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

    f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

190.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

191.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against DANIEL GIBALA in an amount be determined by a trier of fact.

## COUNT XX
### Negligence – GTCR, LLC

192.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 192.

193.   GTCR, LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

194. Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

195. GTCR, LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

196. At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

197. GTCR, LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a. By emitting EtO into the air from its Willowbrook facility;

    b. By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

    c. By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

    d. By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

    e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

FILED DATE: 10/17/2018 9:11 AM  2018L011252

f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

198.  As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

199.  As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

49

FILED DATE: 10/17/2018 9:11 AM   2018L011252

## COUNT XXI
## Willful and Wanton Conduct – GTCR, LLC

200.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 193 and 194 as if fully set forth as Paragraph 200.

201.    At all relevant times, GTCR, LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

202.    At all relevant times, GTCR, LLC knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

203.    GTCR, LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    c.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

50

d. By permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

e. Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f. By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

204. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

205. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XXII
### Ultrahazardous Activity / Strict Liability – GTCR, LLC

206. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 193 and 194 as if fully set forth as Paragraph 206.

207.    GTCR, LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

208.    GTCR, LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

209.    GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

210.    While the activities conducted by GTCR, LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

211.    Because the activities of GTCR, LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

212.    As a direct and proximate result of GTCR, LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

213.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

FILED DATE: 10/17/2018 9:11 AM  2018L011252

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XXIII
### Civil Battery – GTCR, LLC

214. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 193 and 194 as if fully set forth as Paragraph 214.

215. At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

216. Notwithstanding this knowledge, GTCR, LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

217. Plaintiff's contact with EtO was offensive and harmful.

218. GTCR, LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

219. Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

220. As a direct and proximate result of GTCR, LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

221.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XIV
## Public Nuisance – GTCR, LLC

222.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 and 193 and 194 as if fully set forth as Paragraph 222.

223.   The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

224.   GTCR, LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

225.   GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

54

FILED DATE: 10/17/2018 9:11 AM   2018L011252

226.   As a result of GTCR, LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

227.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Anita Govic, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XXV
### Injunctive Relief – All Defendants

228.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 55 as if fully set forth as Paragraph 228.

229.   Defendants have a duty to not pollute the air surrounding the Sterigenics facility in Willowbrook with EtO.

230.   Defendants have breached their duty by emitting EtO from Sterigenics Willowbrook facility on a routine and continuous basis.

231.   Defendants' current emissions of EtO from the Sterigenics facility in Willowbrook have caused that particular tract to have a cancer risk 64 times greater than that accepted by the EPA.

FILED DATE: 10/17/2018 9:11 AM    2018L011252

232.    There is no adequate remedy at law sufficient to account for Defendants'

continuing EtO emissions.

WHEREFORE, Plaintiff, Anita Govic, respectfully requests that this Court

issue an injunction as follows:

    a. ordering Defendants to immediately cease using ethylene
       oxide in Sterigenics Willowbrook facility;

    b. alternatively, ordering Defendants to modify its operations
       such that the cancer risk in Willowbrook resulting from
       ethylene oxide emissions is at or under the acceptable level of
       risk of 1 in 10 ten thousand (or 100 in 1 million).

Dated: October 17, 2018             Respectfully submitted

                             ROMANUCCI & BLANDIN, LLC

              By:        /s Antonio M. Romanucci
                            Attorneys for Plaintiff

Antonio M. Romanucci
Bhavani Raveendran
Martin D. Gould
Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
braveendran@rblaw.net
mgould@rblaw.net
bhensley@rblaw.net

FILED DATE: 10/17/2018 9:11 AM   2018L011252

Steven A. Hart
Brian H. Eldridge
Jennifer M. Cascio
**HART MCLAUGHLIN & ELDRIDGE, LLC**
22 W. Washington Street, Suite 1600
Chicago, Illinois  60602
(312) 955-0545 telephone
(312) 971-9243 facsimile
shart@hmelegal.com
beldridge@hmelegal.com
jcascio@hmelegal.com

FILED
10/29/2018 5:05 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ANITA GOVIC, | ) | |
| | ) | |
| | ) | Case No. 2018-L-011252 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERIGENICS INTERNATIONAL, INC.; | ) | Calendar E |
| STERIGENICS INTERNATIONAL LLC; | ) | |
| STERIGENICS U.S., LLC; BOB NOVAK; | ) | |
| DANIEL GIBALA; and GTCR, LLC; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF ROUTINE MOTION

TO:    No Counsel of Record

PLEASE TAKE NOTICE that on **November 2, 2018, at 8:45 am,** I shall appear before the **Honorable Judge Kathy M. Flanagan in Courtroom 2210 at the Daley Center**, and shall move the court in accordance with **Plaintiff's Routine Motion to for Leave to File a First Amended Complaint** a copy of which is attached hereto.

Respectfully Submitted,

ROMANUCCI & BLANDIN, LLC

By: s/Bryce T. Hensley
One of the Attorneys for Plaintiff

Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
bhensley@rblaw.net

FILED
10/29/2018 5:05 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| ANITA GOVIC, | ) |
| | ) |
| | ) Case No. 2018-L-011252 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STERIGENICS INTERNATIONAL, INC.; | ) Calendar E |
| STERIGENICS INTERNATIONAL LLC; | ) |
| STERIGENICS U.S., LLC; BOB NOVAK; | ) |
| DANIEL GIBALA; and GTCR, LLC; | ) |
| | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S ROUTINE MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT

Now comes the Plaintiff, ANITA GOVIC, by and through her attorneys, ROMANUCCI

& BLANDIN, LLC, and HART MCLAUGHLIN & ELDRIDGE, LLC, and moves this Honorable

Court for leave to file her First Amended Complaint at Law. In support thereof, Plaintiff states as

follows:

1.     This is a toxic exposure case arising out of injuries Plaintiff sustained when living

in close proximity to the Sterigenics facility located in Willowbrook, Illinois, which emitted

ethylene oxide, a known carcinogen, into the surrounding area's air.

2.     Plaintiff filed their initial Complaint at Law on October 17, 2018.

3.     No appearance or answer on behalf of any of the Defendants has been filed in this

matter.

4.     In fact, no Defendant has been served with a copy of the Complaint at Law or

Summons in this matter.

FILED DATE: 10/29/2018 5:05 PM   2018L011252

5.      Since filing the complaint, Plaintiff learned there are additional defendants to be named in this matter.

6.      Further, Plaintiff has also learned of additional allegations as to the culpability of some previously-named Defendants, which Plaintiff seeks to add.

7.      Additionally, Plaintiff has elected to voluntarily dismiss Sterigenics International, Inc., Sterigenics International, LLC, and Daniel Gibala from the complaint without prejudice pursuant to 735 ILCS 5/2-1009(a).

8.      Accordingly, Plaintiff seeks to file its First Amended Complaint at Law adding and dropping said defendants and adding allegations, a copy of which is attached hereto as **Exhibit A**.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests this Honorable Court grant Plaintiffs leave to file her First Amended Complaint at Law.

Respectfully submitted,

By: s/Antonio M. Romanucci
Attorney for Plaintiff

Antonio M. Romanucci                     Steven A. Hart
Bhavani Raveendran                        Brian H. Eldridge
Martin D. Gould                           Jennifer M. Cascio
Bryce T. Hensley                          HART MCLAUGHLIN & ELDRIDGE,
**ROMANUCCI & BLANDIN, LLC**              LLC
321 N. Clark Street, Suite 900            22 W. Washington Street, Suite 1600
Chicago, IL 60654                         Chicago, Illinois 60602
(312) 458-1000 *telephone*                (312) 955-0545 telephone
(312) 458-1004 *facsimile*                (312) 971-9243 facsimile
aromanucci@rblaw.net                      shart@hmelegal.com
braveendran@rblaw.net                     beldridge@hmelegal.com
mgould@rblaw.net                          jcascio@hmelegal.com
bhensley@rblaw.net

FILED
11/2/2018 11:58 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| ANITA GOVIC, | ) |
| | ) |
| | ) Case No. 2018-L-011252 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STERIGENICS U.S., LLC; BOB | ) CALENDAR E |
| NOVAK; ROGER CLARK; and GTCR, | ) |
| LLC; | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

---

## FIRST AMENDED COMPLAINT AT LAW

---

Plaintiff, ANITA GOVIC, by and through counsel, Romanucci & Blandin, LLC, and Hart McLaughlin & Eldridge, LLC, states as follows for her complaint against Defendants STERIGENICS U.S. LLC ("Sterigenics"), BOB NOVAK, ROGER CLARK, and GTCR, LLC:

1

FILED
10/29/2018 5:05 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| ANITA GOVIC, | ) |
| | ) |
| | ) Case No. 2018-L-011252 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STERIGENICS U.S., LLC; BOB | ) CALENDAR E |
| NOVAK; ROGER CLARK; and GTCR, | ) |
| LLC; | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

---

## FIRST AMENDED COMPLAINT AT LAW

---

Plaintiff, ANITA GOVIC, by and through counsel, Romanucci & Blandin, LLC, and Hart McLaughlin & Eldridge, LLC, states as follows for her complaint against Defendants STERIGENICS U.S. LLC ("Sterigenics"), BOB NOVAK, ROGER CLARK, and GTCR, LLC:

1

**EXHIBIT A**

FILED DATE: 10/29/2018 5:05 PM   2018L011252

## INTRODUCTION

For decades, tens of thousands of people have lived in Willowbrook, Burr Ridge, Darien, and Hinsdale, the quiet suburbs of Cook and DuPage Counties Willowbrook, Burr Ridge, Darien, and Hinsdale with the false belief that they had found a sanctuary from the busy streets of Chicago. Just 25 miles southwest of Chicago, the third largest city in America, the area is a disaster zone. It is America's Chernobyl. In 1984, a company called Sterigenics infiltrated the Willowbrook community and began emitting an invisible, cancer causing toxin, ethylene oxide. In 2011, this company was purchased by a Cook County hedge fund, GTCR, LLC. The emissions continued. It was not until August 21, 2018, when the United States Department of Health & Human Services released a report, that the veil was finally lifted on the staggering cancer statistics and other ailments running rampant in these quiet communities. With the cancer-causing effects of ethylene oxide having been studied since the 1940s, America's Chernobyl has been nearly 80 years in the making and it affects our children, our parents, and our grandparents. This is about the children our community may never have, the lives cut short, the dreams destroyed, and the memories never made.

## OVERVIEW

1.      Since 1984, Sterigenics has been emitting ethylene oxide (hereinafter "EtO"), a known carcinogen, into the air from its facility located in Willowbrook, Illinois. As a result, for the last 34 years, those who live and work in Willowbrook and

FILED DATE: 10/29/2018 5:05 PM    2018L011252

the surrounding area have unknowingly been inhaling EtO in the air they breathe on a routine and continuous basis.

2.     Sterigenics neither informed the residents of the Willowbrook community or those who live or work nearby that it systematically emits EtO into the air, nor warned residents that they were routinely and constantly breathing and are continuing to routinely and constantly breathe in a known carcinogen.

3.     On or about August 21, 2018, an "Evaluation of Potential Health Impacts for Ethylene Oxide Emissions" prepared by the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry (hereinafter "ATSDR"), was released to the general public.[1] The ATSDR report was based upon air measurements of EtO collected in May 2018 from 29 discrete locations near the Sterigenics facility in Willowbrook.

4.     Relative to the Sterigenics facility in Willowbrook, the ATSDR concluded that "residents and workers are exposed to elevated airborne EtO concentrations from facility emissions." The ATSDR further concluded that "*an elevated cancer risk exists* for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility," and that "[t]hese elevated risks *present a public health hazard to these populations*." Among other things, the ATSDR Evaluation "recommends that Sterigenics take *immediate action* to reduce EtO emissions at this facility."

---

[1] https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf

FILED DATE: 10/29/2018 5:05 PM  2018L011252

5.      According to the EPA, the upper limit of acceptable cancer risk for airborne toxins, such as EtO, is 1 in 10 thousand (or 100 in 1 million). In other words, according to the EPA, it "will generally presume that if the risk to that individual is no higher than approximately 1 in 10 thousand, that risk level is considered acceptable. . . ."[2]

6.      Based upon the EPA's 2014 National Air Toxics Assessment, there are 106 census tracts in the United States with cancer risk scores greater than the acceptable limits. Most of those 106 tracts are located in "Cancer Alley," which is a notorious area along the Mississippi River between Baton Rouge and New Orleans with numerous industrial plants.

7.      According to the EPA's 2014 measurements, the immediate area in DuPage County surrounding the Sterigenics facility in Willowbrook, referred to as Tract 17043845902, has a cancer risk of 281.8075 in 1 million—which is nearly three times higher than the EPA's acceptable limits.

8.      To put this into further context, the EPA's 2014 National Air Toxics Assessment documented cancer risks in **76,727** census tracts across the country. The Willowbrook Tract, 1704385902, has the highest cancer risk in Illinois and the nineteenth (19th) highest cancer risk in the United States. In other words, the Willowbrook Tract is in the top 99.98% tracts in terms of cancer risk in the country.

9.      Figure 1, below, identifies the nineteen census tracts in the United States with the highest cancer risk. Twelve are located along Cancer Alley. Five tracts

---

[2] https://www.epa.gov/national-air-toxics-assessment/nata-frequent-questions

have sterilization plants, such as Sterigenics, that emit massive amounts of EtO. In fact, sterilization plants are almost entirely responsible for causing the extraordinarily high cancer risks in DuPage County, Illinois, Jefferson County, Colorado, and Lehigh County, Pennsylvania.

### Figure 1

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | State | EPA Region | County | FIPS | Tract | Population | Total Cancer Risk (per million) |
| 2 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070800 | 2,537 | 1,505.1167 |
| 3 | LA | EPA Region 6 | St. Charles | 22089 | 22089060100 | 1,937 | 808.7227 |
| 4 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070900 | 3,115 | 616.6193 |
| 5 | PA | EPA Region 3 | Lehigh | 42077 | 42077005902 | 1,571 | 596.4609 |
| 6 | CO | EPA Region 8 | Jefferson | 08059 | 08059010902 | 2,310 | 525.5596 |
| 7 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070700 | 4,348 | 511.3240 |
| 8 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071000 | 2,840 | 490.2785 |
| 9 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095000000 | 45,924 | 413.3152 |
| 10 | WV | EPA Region 3 | Kanawha | 54039 | 54039013400 | 2,222 | 366.6597 |
| 11 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071100 | 3,398 | 363.1912 |
| 12 | TX | EPA Region 6 | Harris | 48201 | 48201343100 | 4,629 | 348.2016 |
| 13 | PA | EPA Region 3 | Lehigh | 42077 | 42077000101 | 3,661 | 346.5181 |
| 14 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070500 | 6,229 | 329.2657 |
| 15 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070100 | 2,685 | 303.0079 |
| 16 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070300 | 6,258 | 296.3112 |
| 17 | TX | EPA Region 6 | Harris | 48201 | 48201343200 | 4,944 | 296.1831 |
| 18 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070400 | 4,381 | 286.5417 |
| 19 | LA | EPA Region 6 | St. Charles | 22089 | 22089062700 | 4,753 | 284.5145 |
| 20 | IL | EPA Region 5 | DuPage | 17043 | 17043845902 | 3,411 | 281.8075 |

10.    With respect to the Willowbrook Tract, 88.98% of the elevated cancer risk is attributed to EtO emissions; and the only facility in the Willowbrook Tract emitting EtO is Sterigenics. As a result, Sterigenics alone is almost entirely responsible for the Willowbrook Tract having the 19th highest cancer risk in the country.

11.    Only one facility in the entire country emits more EtO than the Sterigenics facility in Willowbrook.

FILED DATE: 10/29/2018 5:05 PM    2018L011252

12.    The data cited in Paragraphs 6 through 11, above, is based on sampling from 2014. More recent data, however, reveals that the cancer risk in Willowbrook is far higher than previously determined. In May 2018, air samples were taken and analyzed from the area surrounding the Sterigenics facility in Willowbrook. Those samples revealed a **current** cancer risk of 6,400 in 1 million (or 64 in 10 thousand), which is **64 times the acceptable limit**.

13.    As a direct and proximate result of Sterigenics' emissions of EtO over the course of the last 34 years, the Willowbrook community has become one of the most toxic and one of the most dangerous communities from a health and well-being standpoint in the entire country. Those who live and work in the Willowbrook area have been victimized by Sterigenics' negligent acts and omissions, as well as its conscious disregard and utter indifference to human life and the health and well-being of those in the community.

14.    Neither the extent of Sterigenics' EtO emissions nor the impact of those emissions on the health and well-being of those who live and work in the Willowbrook area was known by the general public until the August 21, 2018 release of the ATSDR report and the August 22, 2018 release of EPA's 2014 National Air Toxics Assessment.

### PARTIES

15.    This is an Illinois action. It is brought on behalf of an Illinois citizen, for an injury that occurred in Illinois, as a result of ongoing negligence that took place in Illinois. All of the actions that caused Plaintiff's injuries were a direct result of

FILED DATE: 10/29/2018 5:05 PM    2018LO11252

FILED DATE: 10/29/2018 5:05 PM    2018L011252

actions orchestrated by an entity managed out of Illinois, Sterigenics, U.S., LLC, which is now overseen by another Illinois entity, GTCR, LLC.

16.     Plaintiff, ANITA GOVIC, is 48 years old and is a citizen of Illinois. Ms. Govic lived approximately 1.5 miles from the Sterigenics facility in Willowbrook, Illinois for approximately 8 years between 1984 and 1996, while also attending Hinsdale South High School from 1984-1988, located approximately 1 mile from the same facility. Despite now living in Cook County, Illinois, Ms. Govic has continued visiting her family at the same location, approximately 1.5 miles from the Sterigenics facility from 1996 up until the present day.

17.     In 2017, Ms. Govic was officially diagnosed with Breast cancer in Chicago, Cook County, Illinois. The vast majority of Ms. Govic's treatment has occurred in Cook County, Illinois.

18.     Ms. Govic did not have notice that her Breast cancer was wrongfully caused or that it was caused by Sterigenics' emissions of EtO until the recent ATSDR report was released in August 2018.

19.     Defendant Sterigenics U.S., LLC is a limited liability company organized under the laws of Delaware and having its headquarters and principal place of business at 2015 Spring Road, Suite 650, Oak Brook, Illinois 60523.

20.     Sterigenics U.S., LLC, is a subsidiary of Sotera Health LLC, previously named Sterigenics International, Inc.

21.     In 2011, Sterigenics International LLC was purchased for $675 million by the Chicago-based private equity firm, GTCR, LLC (hereinafter "GTCR"). From

FILED DATE: 10/29/2018 5:05 PM    2018L011252

2011 until the present, GTCR, LLC, with its principal place of business at 300 N. LaSalle Street, Suite 5600, Chicago, Cook County, IL, owned, operated, managed, and/or maintained Sterigenics. The Chairman of GTCR in 2011 was Governor Bruce Rauner.

22.    In 2017, Sterigenics International LLC announced that it had changed its parent company name to Sotera Health LLC.

23.    The core of GTCR's investment strategy is—as repeated frequently on its website and other promotional material—"finding and partnering with management leaders in core domains to identify, acquire and build market-leading companies through transformational acquisitions and organic growth."[3]

24.    GTCR's approach of "creating partnerships with exceptional leaders" is so fundamental to its business that GTCR has trademarked "The Leaders Strategy" to describe its collaborative approach to investing in companies.[4]

25.    GTCR has described its involvement with Sterigenics as a partnership from the beginning: "As part of the Sterigenics transaction, GTCR partnered with Michael Mulhern, who joined as CEO shortly after closing. Together, GTCR and Mr. Mulhern identified several initiatives to improve Sterigenics' operational and growth initiatives, enhance its market leadership and drive incremental earnings growth."[5]

---

[3] https://www.gtcr.com/the-leaders-strategy/
[4] *Id.*
[5] https://www.gtcr.com/leadership-stories/sterigenics-transformation-through-organic-growth-and-strategic-acquisitions/

FILED DATE: 10/29/2018 5:05 PM    2018L011252

GTCR's close relationship with Sterigenics has also frequently been mentioned in GTCR's own material[6] and in the media.[7]

26. A video featured prominently on GTCR's website homepage at https://www.gtcr.com/ further highlights the integrated nature of GTCR's relationship with Sterigenics. In the video, which is transcribed below, GTCR Managing Director Dean Mihas and the then-CEO of Sterigenics discuss GTCR's significant involvement in and control over Sterigenics:

> MIHAS (GTCR Managing Director): We believe very strongly at GTCR that domain expertise is pretty critical.

> MULHERN (Sterigenics then-CEO): When you combine that knowledge, that analysis, prudent risk-taking, I think that leads to – has the potential to lead to – great health outcomes.

> MIHAS: Take the healthcare group in particular. We spent a lot of time doing proactive research, picking niches within the healthcare industry, to explore, to really understand the trends.

> MULHERN: The amount of diligence they do to really understand a sector, the companies within the sector, the management teams, is unlike anything I've seen.

> MIHAS: It was probably a year before we even acquired Sterigenics that we started digging around the contract sterilization space, trying to understand who the key companies are, who the leaders are, what the industry growth profile looks like, how large it is.

> MULHERN: It came to our knowledge that a company was about to come to market to be sold. If that company got into the wrong hands, it would put at risk our source of supply. GTCR just kicked it into high gear and said we must own this asset, and today we're the only vertically integrated sterilization

---

[6] See, e.g., https://www.gtcr.com/gtcr-closes-the-acquisition-of-sterigenics-international-inc/
[7] *See, e.g.,* https://www.pehub.com/2011/03/gtcr-completes-sterigenics-buy/

9

FILED DATE: 10/29/2018 5:05 PM 2018L011252

company in the world and in large part because GTCR made the decision and committed the resources to get it done.

MIHAS: So there's a lot of effort and R&D really that goes into having this domain expertise. It's not just about working on a deal when it comes in.

MULHERN: Beyond the obvious, which is that they're extremely talented at what they do, I have enormous trust in them. And I think trust is a critical part when you partner with a private equity firm.

27.     GTCR's partnership with Sterigenics also included playing an active role in expanding Sterigenics' geographic footprint: "In addition to organic initiatives, GTCR and management also strategically repositioned the business through three acquisitions, including two sterilization facility add-ons and the transformative acquisition of Nordion, a key supplier to Sterigenics."[8]

28.     The close partnership between GTCR and Sterigenics is also reflected in GTCR's substantial involvement on Sterigenics' board of directors. According to GTCR's website, at least four of its ten managing directors currently serve, or have served, on the board of directors of Sterigenics or Sotera.[9]

___

[8] https://www.gtcr.com/leadership-stories/sterigenics-transformation-through-organic-growth-and-strategic-acquisitions/
[9] *See* https://www.gtcr.com/team-member/sean-l-cunningham/; https://www.gtcr.com/gtcr-promotes-aaron-d-cohen-and-sean-l-cunningham-to-principal/; https://www.gtcr.com/team-member/benjamin-j-daverman/;
https://www.bloomberg.com/research/stocks/private/person.asp?personId=66077&privcapId=20801;
https://www.gtcr.com/team-member/david-a-donnini/;
https://www.bloomberg.com/research/stocks/private/person.asp?personId=1155789&privcapId=20801
; https://www.gtcr.com/team-member/constantine-s-mihas/

FILED DATE: 10/29/2018 5:05 PM   2018L011252

29.     Publicly available documents reveal that principals of GTCR, acting in their capacity as members of the board of directors of Sterigenics, have been actively involved in Sterigenics acquisition of other companies.[10]

30.     Upon information and belief, Defendant Bob Novak is an individual who resides the state of Illinois.  Novak is the Operations Manager at the Sterigenics facility in Willowbrook, and has worked in that capacity since August 2003. He is responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety.

31.     Defendant Roger Clark is an individual who resides in Chicago, Cook County, Illinois.  Clark was the Maintenance Supervisor at the Sterigenics facility in Willowbrook and held that position for nearly 30 years from the late 1980s until approximately 2015.  He was responsible for calibrating the internal EtO monitors and overseeing the maintenance activities at the Sterigenics' facility.

## VILLAGE OF WILLOWBROOK

32.     The Village of Willowbrook is a suburban community located roughly 20 miles southwest of Chicago. Its population is approximately 8,500. The Village owns and operates over 54 acres of parks on 10 separate sites throughout the Village.

33.     Sterigenics operates two buildings in Willowbrook. Building One is located at 7775 S. Quincy Street and Building Two is located at 830 Midway Drive.

---

[10]http://news.nordion.com/mobile.view?c=68761&v=202&d=3&id=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbbS9maWxpbmcueG1sP2lwYWdlPTk1NTE5NzMmRFNFUT0yJlNFUT0mU1FERVNDPVNFQ1RJT05fRVhISUJUJVCZleHA9JnN1YnNpZD01Nw%3D%3D

11

FILED DATE: 10/29/2018 5:05 PM   2018L011252

Upon information and belief, Sterigenics operated a third building at 7827 Quincy Street for a brief period of time.

34. During the times relevant for the time period referenced herein, Sterigenics operated another facility at 711 Cooper Court, Schaumburg, Cook County, Illinois.

35. The three Sterigenics buildings in Willowbrook are all located in a densely populated metropolitan area with 19,271 people living within one mile.

36. Gower Middle School in Burr Ridge is located 0.7 miles from the Sterigenics facility and has an enrollment of approximately 400 students. Gower West Elementary School is 0.9 miles from the Sterigenics facility. Conev's Cradle Infant Care, Inc., is a daycare center located 0.7 miles from the Sterigenics facility. Hinsdale South High School, with an enrollment of 1,500 students, is located 1.1 miles from the Sterigenics facility.

37. The Willowbrook Police Department, with its 23 full-time sworn police officers and three civilian employees, is located a mere 495 feet from the Sterigenics facility. Willowbrook's Village Office and City Hall is located 0.2 miles from the Sterigenics facility.

38. The Willowbrook Community Park is 0.6 miles from the Sterigenics facility. And there are highly dense residential areas to the immediate west of the Sterigenics facility within 0.3 miles, to the southeast within 0.6 miles, to the southwest within 0.9 miles, to the north within 0.7 miles, to the northeast within 0.8 miles, and to the east within 1.0 mile.

39. Willowbrook Town Center, which is located 1.1 miles from the Sterigenics facility, has nearly 200,000 square feet of retail stores, restaurants, and other businesses. There are 91,000 residents within a three-mile radius of the Willowbrook Town Center, and an additional 33,000 people employed in the area's 3,000-plus businesses.

40. Figure 2, below, depicts the area within a 1.5 mile radius of the Sterigenics facility.

**Figure 2**



## ETHYLENE OXIDE

41. The DNA damaging properties of EtO have been studied since the 1940s, and for more than 40 years it has been consistently recognized as dangerous, toxic, and carcinogenic.

42. In a 1977 report, the National Institute for Occupational Safety and Health (hereinafter "NIOSH") concluded that occupational exposure to EtO may

increase the frequency of genetic mutations in human populations and recommended that EtO be considered as mutagenic and potentially carcinogenic to humans. Given EtO's carcinogenic potential, the 1977 NIOSH report also recommended that alternative sterilization processes be used whenever available.

43.    In 1981, NIOSH released a new bulletin focusing on new evidence of carcinogenic, mutagenic, and reproductive hazards associated with EtO. It also reiterated that EtO was a potential occupational carcinogen and reported that no safe levels of EtO exposure have been demonstrated.

44.    In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

45.    In 1987, the state of California (home to two Sterigenics EtO sterilizing plants) officially designated EtO a carcinogen.

46.    In the early 1990s, the first high quality, long-term research on ethylene oxide's carcinogenic impacts on humans was published. This research was undertaken based on a NIOSH study tracking the mortality of 18,254 U.S. workers who had been exposed to EtO between the 1940s and 1980s at sterilizer plants much like the Sterigenics Willowbrook facility. In fact, according to Kathleen Hoffman the NIOSH study actually included a few Sterigenics facilities.[11]  The NIOSH study ultimately found causal links between exposure to EtO and increased mortality from lymphatic, hematopoietic, and breast cancers. The research on the NIOSH study has

---

[11] https://yosemite.epa.gov/Sab/Sabproduct.nsf/B839FA45582C200185257D9500496B0E/$File/EPA-+Sterigenics+Speaking+Points+for+IRIS+SAB+Review-Nov+2014.pdf *accessed 9.25.2018.*

14

FILED DATE: 10/29/2018 5:05 PM    2018L011252

since been heavily cited and relied upon by major regulatory organizations, including the World Health Organization (hereinafter "WHO") and the United States Environmental Protection Agency (hereinafter "EPA").

47.     In 1994 the WHO's International Agency for Research on Cancer (hereinafter "IARC") listed EtO as a Group 1 human carcinogen, the agency's highest risk classification, finding "Ethylene Oxide is carcinogenic to humans."

48.     In 2000, the U.S. Department of Health and Human Services published the Ninth Annual Report on Carcinogens and revised its classification for EtO to known to be a human carcinogen.

49.     The U.S. Department of Labor's Occupational Safety and Health Administration (hereinafter "OSHA") 2002 fact sheet on EtO indicates that "[b]oth human and animal studies show that EtO is a carcinogen" and requires employers to provide clear signs and labels notifying workers of EtO's "carcinogenic and reproductive hazards."[12]

50.     In 2016, the EPA's Integrated Risk Information System (hereinafter "IRIS") reclassified EtO as "carcinogenic to humans," and increased the cancer potency of EtO by 30 times.

51.     The half-life of EtO in the atmosphere has been reported in certain circumstances to be two-hundred eleven (211) days. Neither rain nor absorption into aqueous aerosols is capable of removing ethylene oxide from the atmosphere.

---

[12] https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf *accessed 9.25.2018.*

52. Acute exposure to EtO can result in nausea, vomiting, neurological disorders, bronchitis, pulmonary edema, and emphysema.

53. Chronic exposure to EtO can irritate the eyes, skin, nose, throat, lungs, and can cause harm to the brain and nervous system leading to headaches, nausea, memory loss, and numbness.

54. Chronic inhalation exposure to EtO can also cause reproductive and developmental impairments. Evidence recognized by the EPA indicates that inhalation exposure to EtO can cause an increased rate of miscarriages in females. Evidence also indicates that EtO inhalation exposure can cause decreased sperm concentration and testicular degeneration in males.

55. Additionally, inhalation exposure to EtO can cause mutations and chromosomal damage that can lead to birth defects and cancer. Even when exposure to EtO diminishes or ceases, the frequency of sister chromatid exchanges (mutations/chromosomal alterations) have been found to remain elevated for at least six months.

56. Chronic inhalation exposure to EtO also causes cancer. Evidence recognized by the EPA indicates that inhalation exposure to EtO causes various cancers including but not limited to lymphatic cancers, leukemia, and breast cancer. There is also evidence that EtO causes tumors in the body and reproductive issues in both men and women. **As a result, the EPA has concluded that EtO is carcinogenic to humans by the inhalation route of exposure.** The stated confidence in this classification is "HIGH."

16

## STERIGENICS' OPERATIONS

57.     Sterigenics has been releasing EtO into the air in the Willowbrook area since 1984. The facility stores EtO and sprays it into gas chambers to sterilize medical equipment and pharmaceuticals. Building One of the Sterigenics facility, which was constructed in 1984, holds fifteen gas chambers, while Building Two, which was constructed in 1999, holds four gas chambers which were built in 1999 and 2012. Upon information and belief, there were periods of time where no pollution controls were in place. Additionally, even where there have been certain pollution controls in place they have been ineffective and/or lacking due to the acts and omissions of the defendants. Further, upon information and belief, some ethylene oxide used by Sterigenics does not go through any pollution control but rather is emitted into the air through back vents.

58.     The Sterigenics facility operates 24 hours per day, which means toxic, cancerous gas is emitted from the Sterigenics facility on a steady and continuous basis. As a result, EtO is a constant element in the air breathed by those who live and work near the Willowbrook facility.

59.     From 1995 through 2016, the reported EtO emissions from the Sterigenics facility are depicted in Figure 3, below:

****

17

FILED DATE: 10/29/2018 5:05 PM    2018L011252

**Figure 3**

| Year | Pounds |
|------|--------|
| 1995 | 18,213 lbs. |
| 1996 | 22,000 lbs. |
| 1997 | 26,000 lbs. |
| 1998 | 31,000 lbs. |
| 1999 | 1,440 lbs. |
| 2000 | 7,341 lbs. |
| 2001 | 7,848 lbs. |
| 2002 | 6,686 lbs. |
| 2003 | 6,630 lbs. |
| 2004 | 5,039 lbs. |
| 2005 | 2,621 lbs. |

| Year | Pounds |
|------|--------|
| 2006 | 3,985 lbs. |
| 2007 | 3,698 lbs. |
| 2008 | 3,597 lbs. |
| 2009 | 3,429 lbs. |
| 2010 | 6,869 lbs. |
| 2011 | 6,878 lbs. |
| 2012 | 6,811 lbs. |
| 2013 | 5,892 lbs. |
| 2014 | 5,036 lbs. |
| 2015 | 4,706 lbs. |
| 2016 | 4,009 lbs. |

60.    No data on ambient air emissions was kept before 1995. However, the ATSDR notes that the available data suggest that "substantially higher ambient releases prior to 1995 were likely." Indeed, a lone 1988 report on Sterigenics' Willowbrook facility's EtO emissions accessed through the EPA's TRI Explorer Database supports this contention.[13] The 1988 report indicates that the Willowbrook facility emitted 97,518 pounds of EtO into the air.[14] This is over three times greater than the highest amount recorded in the contiguous 1995-2016 data set (32,200 pounds in 1998) and over 20 times greater than emissions levels in 2016 (4,205 pounds).

---

13

https://iaspub.epa.gov/triexplorer/release_trends?tri=60521GRFFT7775Q&p_view=TRYR&trilib=TRIQ1&sort=_VIEW_&sort_fmt=1&state=All+states&county=All+counties&chemical=000075218&industry=ALL&core_year=&tab_rpt=1&FLD=AIRLBY&FLD=E1&FLD=E2&FLD=E3&FLD=E4&FLD=E41&FLD=E42&FLD=E5&FLD=E52&FLD=E53&FLD=E53A&FLD=E53B&FLD=E54&FLD=E51&FLD=E51A&FLD=E51B&FLD=TSFDSP&FLD=m10&FLD=m41&FLD=m62&FLD=potwmetl&FLD=m71&FLD=m81&FLD=m82&FLD=m72&FLD=m63&FLD=m64&FLD=m65&FLD=m66&FLD=m67&FLD=m73&FLD=m79&FLD=m90&FLD=m94&FLD=m99&FLD=RELLBY

14

https://ofmpub.epa.gov/enviro/tri_formr_partone_v2.get_thisone?rpt_year=1988&dcn_num=1388025024213&ban_flag=Y

18

FILED DATE: 10/29/2018 5:05 PM    2018L011252

61.    Without discovery from Sterigenics, it is impossible to know precisely how many pounds of EtO Sterigenics released into the air from 1984 to 1994, but it is reasonable to infer that the pre-1995 emissions of EtO were at best, similar to those from 1995 to 1998, and at worst, closer to the colossal emissions in 1988.

62.    Notably, the historical EPA emission reports from the Willowbrook Sterigenics facility demonstrate that the amounts of EtO released from the plant over the last decade are significantly lower than the amounts released during prior decades. Total air releases in the 1990s were up to **7.7 times higher** than present levels. Sterigenics' EtO releases in the 1980s were even higher than this, with available data suggesting that Sterigenics released **over 20 times more** EtO into the air in 1988 than it did in 2016, the most recent date for which emissions data is publicly available. As a result, the ATSDR report's current estimate of Willowbrook area residents' cancer risk (which is based on sampling conducted this year) must drastically underestimate of the levels of risk faced by those exposed to the Sterigenics facility's emissions in the 1980s and 1990s

63.    Sterigenics' air emissions were not the only manner in which Sterigenics exposed area residents, workers, and students to EtO. Sterigenics reported at least one mass "uncontrolled release" of EtO. On or about October 7, 2013, Sterigenics released ethylene glycol (a byproduct of EtO) into the soil and groundwater at its Willowbrook facility. In addition, on October 21, 2013, Sterigenics reported the uncontrolled release of 30 pounds of ethylene oxide into the air from its Willowbrook facility. The Illinois Attorney General filed a lawsuit against Sterigenics for its water

19

and air pollution and alleged numerous violations of environmental statutes and regulations. Sterigenics entered into a consent order whereby it agreed to pay a $50,000.00 fine.

64.     Upon information and belief, Sterigenics also released ethylene glycol into the soil and groundwater at its Willowbrook facility on a regular and continuing basis via drain pits that collected excess ethylene glycol from the EtO chambers.

65.     At all relevant times, Sterigenics knew or should have known that EtO is toxic and dangerous to human health and well-being. In addition, at all relevant times, Sterigenics knew or should have known that EtO is classified as a carcinogen and has been determined to cause various illnesses and ailments including, but not limited to, cancer.

66.     Notwithstanding Sterigenics' knowledge concerning the dangers of operation, it has been emitting EtO from its facility in Willowbrook on a routine and constant basis for 34 years. Further, notwithstanding Sterigenics' knowledge that chronic inhalation exposure to EtO causes adverse conditions to the eyes, skin, nose, throat, lungs, and nervous system, reproductive and developmental impairments, mutations, chromosomal damage, birth defects, and cancer, it has failed to warn those who live and work in the Willowbrook area that they are being exposed to and breathing in EtO on a routine and constant basis.

## STERIGENICS' PATTERN OF BEHAVIOR

67.     Sterigenics has been the subject of regulatory and administrative enforcement relative to its EtO emissions in Europe. Beginning in 1992, Sterigenics

operated a sterilization facility in Zoetermeer, a city in the western Netherlands. The Zoetermeer facility was located in an area with residential housing and numerous small business. In 2009, it was determined that Sterigenics had been knowingly releasing amounts of EtO that exceeded the local Maximum Permissible Risk concentration into the air for a number of years and was penalized. Sterigenics, however, continued with its excessive emissions until it ultimately relocated its facility in 2010. According to the Public Prosecutor in Zoetermeer, Sterigenics knew of the unauthorized emissions, but failed to act and did not warn local residents about the emissions or the dangers associated therewith.

68.     Sterigenics has also exhibited a pattern of neglecting safety in its facilities in the U.S. Sterigenics failed to properly train employees in the safe use of EtO at its sterilizing plant in Ontario, California, which resulted in a major EtO explosion on August 19, 2004 that injured four employees and forced the evacuation of the plant and neighboring facilities. The U.S. Chemical Safety and Hazard Investigation Board (hereinafter "CSB") investigation into the incident found that Sterigenics had failed to ensure its maintenance employees understood the hazards associated with EtO-based processes, which led them to manually override safety devices, causing the explosion. The CSB faulted Sterigenics management for not implementing "company-wide engineering control recommendations that could have prevented this explosion" and failing to follow recommendations on EtO concentrations disseminated by NIOSH.

21

69.     Further evidencing Sterigenics' disregard for safety, OSHA records show that Sterigenics has paid thousands of dollars in fines for safety violations at its Willowbrook facility.[15]  Specifically, Sterigenics paid $5,062 in fines in 2006 for several "Serious" violations that left workers exposed to unspecified "highly hazardous chemicals."[16]  Given the work undertaken at the Willowbrook facility, these "highly hazardous chemicals" likely included EtO.

70.     Current and former Sterigenics employees have also raised concerns about company safety practices around EtO. For instance, on the company's Glassdoor page, one former employee noted on June 25, 2013 that "[t]here is a minimum attention to quality & safety which will backfire eventually."[17] Another stated on October 9, 2015 that "you're working with Ethylene Oxide which is extremely dangerous and the company seems to cut corners around safety at times."[18] Perhaps most concerning, an "EtO A Operator" in the Charlotte, North Carolina facility reported on February 24, 2015 that "Safety is an issue sometimes regarding procedures. The maintenance team cuts a lot of corners." This employee advised management to "Lock out the overrides for equipment. Fire any maintenance manager that shows operators how to manually operate equipment without it

---

[15] E.g. https://www.osha.gov/pls/imis/establishment.inspection_detail?id=308153717 *accessed 9.25.2018.*
[16] https://www.osha.gov/pls/imis/establishment.inspection_detail?id=308153717 &
https://www.osha.gov/pls/imis/establishment.violation_detail?id=308153717&citation_id=01001 *accessed 9.25.2018.*
[17] https://www.glassdoor.com/Reviews/Employee-Review-Sterigenics-RVW2768416.htm *accessed 9.25.2018.*
[18] https://www.glassdoor.com/Reviews/Employee-Review-Sterigenics-RVW8236300.htm *accessed 9.25.2018.*

FILED DATE: 10/29/2018 5:05 PM    2018L011252

showing on the computer system."[19] Notably, this comment comes after the 2004 Ontario, California explosion. As discussed above, the CSB identified maintenance cutting corners and manually overriding equipment as factors leading to that incident. This employee review suggests that the safety and management failures that caused the California explosion were not addressed system-wide and continued to be in evidence at other Sterigenics facilities over a decade later.

71.     Taken together, these elements demonstrate a pattern of Sterigenics consistently failing to implement company-wide safety measures across all its facilities, despite research, NIOSH bulletins, regulatory interventions, and problematic incidents demonstrating their need. This willingness to "cut corners" and lack of oversight may explain why Sterigenics failed for decades to install emission mitigation technology to limit passive venting of EtO from its Willowbrook facility.

## COUNT I
## Negligence – Sterigenics U.S., LLC

72.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph 72.

73.     Sterigenics U.S., LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

74.     Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

---

[19]    https://www.glassdoor.com/Reviews/Employee-Review-Sterigenics-RVW5987616.htm *accessed 9.25.2018.*

FILED DATE: 10/29/2018 5:05 PM   2018L011252

FILED DATE: 10/29/2018 5:05 PM   2018L011252

75.     Sterigenics U.S., LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

76.     At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

77.     Sterigenics U.S., LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a.  By emitting EtO into the air from its Willowbrook facility;

b.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

c.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d.  By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

24

FILED DATE: 10/29/2018 5:05 PM   2018L011252

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

78. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

79. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT II
### Negligent Training – Sterigenics U.S., LLC

80. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 80.

81. Sterigenics U.S., LLC had and continues to have a duty to properly train its employees to control and dispose of hazardous substances including EtO and its byproducts, including but not limited to ethylene glycol.

82. At all relevant times, Sterigenics U.S., LLC knew or should have known that failing to properly train its employees to control, monitor, and dispose of hazardous materials would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

83. Sterigenics U.S., LLC breached its duty to properly train its employees in one or more of the following ways:

    a. By failing to train its employees about the carcinogenic effects of EtO;

    b. By failing to train its employees about the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, such that it would prevent unintended leaks, spills or emissions;

    c. By failing to train its employees about the proper procedures to monitor EtO emissions;

    d. By failing to train its employees about the proper procedures for recording EtO emissions;

    e. By failing to train its employees about the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

    f. By failing to train its employees about the proper procedures for repairing and/or replacing defective EtO emissions equipment;

    g. By failing to train its employees about the proper procedures for reporting uncontrolled emissions; and

FILED DATE: 10/29/2018 5:05 PM 2018L011252

FILED DATE: 10/29/2018 5:05 PM   2018L011252

h. By failing to properly train its employees about the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol.

84.     As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

85.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT III
## Negligent Supervision – Sterigenics U.S., LLC

86.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 86.

87.     Sterigenics U.S., LLC had and continues to have a duty to properly supervise its employees to prevent a creation of danger or harm to third persons.

88.     At all relevant times, Sterigenics U.S., LLC knew or should have known that failing to properly supervise its employees in their control, monitoring and disposal hazardous materials including EtO and its by products, including but not

limited to ethylene glycol, would have a toxic, poisonous, and highly deleterious effect

upon the health, safety, and well-being of persons breathing it.

89. Sterigenics U.S., LLC breached its duty to supervise its employees in

one or more of the following ways:

a. By failing to recognize when the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, were violated resulting in unintended leaks, spills or emissions;

b. By failing to reprimand and/or discipline employees when the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, were violated resulting in unintended leaks, spills or emissions;

c. By retaining employees who repeatedly violated the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, resulting in unintended leaks, spills or emissions;

d. By failing to recognize when the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility were violated resulting in unintended leaks, spills, or emissions;

e. By failing to reprimand and/or discipline employees when the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility were violated resulting in unintended leaks, spills, or emissions;

f. By retaining employees who repeatedly violated the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility resulting in unintended leaks, spills, or emissions;

g. By failing to recognize when the proper procedures for repairing and/or replacing defective EtO emissions equipment were violated;

FILED DATE: 10/29/2018 5:05 PM   2018L011252

h. By failing to reprimand and/or discipline employees when the proper procedures for repairing and/or replacing defective EtO emissions equipment were violated;

i. By retaining employees who repeatedly violated the proper procedures for repairing and/or replacing defective EtO emissions equipment;

j. By failing to recognize when the proper procedures for reporting uncontrolled emissions were violated;

k. By failing to reprimand and/or discipline employees when the proper procedures for reporting uncontrolled emissions were violated;

l. By retaining employees who repeatedly violated the proper procedures for reporting uncontrolled emissions;

m. By failing to recognize when the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol were violated;

n. By failing to reprimand and/or discipline employees when the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol were violated;

o. By retaining employees who repeatedly violated the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol;

p. By failing recognize when the proper procedures to monitor EtO emissions were violated;

q. By failing to reprimand and/or discipline employee when the proper procedures to monitor EtO emissions were violated;

r. By retaining employees who repeatedly violated the proper procedures to monitor EtO emissions;

s. By failing to recognize when the proper procedures for recording EtO emissions were violated;

29

FILED DATE: 10/29/2018 5:05 PM    2018L011252

t.  By failing to reprimand and/or discipline employees when the proper procedures for recording EtO emissions were violated; and

u.  By retaining employees who repeatedly violated the proper procedures for recording EtO emissions.

90.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

91.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT IV
## Willful and Wanton Conduct – Sterigenics U.S., LLC

92.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 92.

93.    Sterigenics U.S., LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

30

FILED DATE: 10/29/2018 5:05 PM    2018L011252

94. At all relevant times, Sterigenics U.S., LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

95. Sterigenics U.S., LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

 a. By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

 b. By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

 c. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

 d. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

 e. By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

 f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

 g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

96.     As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

97.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT V
### Ultrahazardous Activity / Strict Liability – Sterigenics U.S., LLC

98.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 98.

99.     Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

100.   Sterigenics U.S., LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

101.    Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

102.    While the activities conducted by Sterigenics U.S., LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

103.    Because the activities of Sterigenics U.S., LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

104.    As a direct and proximate result of Sterigenics U.S., LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

105.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT VI
### Civil Battery – Sterigenics U.S., LLC

106.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 106.

33

FILED DATE: 10/29/2018 5:05 PM   2018L011252

107.  At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

108.  Notwithstanding this knowledge, Sterigenics U.S., LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

109.  Plaintiff's contact with EtO was offensive and harmful.

110.  Sterigenics U.S., LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

111.  Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

112.  As a direct and proximate result of Sterigenics U.S., LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

113.  As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT VII
### Public Nuisance – Sterigenics U.S., LLC

114.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 114.

115.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO. The Illinois Constitution guarantees these rights to its citizens. Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy - Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

116.    Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live

35

and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

117.    Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

118.    As a result of Sterigenics U.S., LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

119.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT IX
### Negligence – Bob Novak

120.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph as if fully set forth as Paragraph 120.

36

121. Since August 2003, Bob Novak has been the Operations Manager at the Sterigenics facility in Willowbrook.

122. In that capacity, Bob Novak has been responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, which would include testing and analysis to determine the nature and extent of EtO emissions.

123. At all relevant times, Bob Novak had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

124. At all relevant times, Bob Novak knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

125. Bob Novak breached his duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a. Permitting chamber doors to remain open during and/or after the sterilization process and thereby allowing dangerous amounts of ethylene oxide to escape the chamber area in the Sterigenics facility in Willowbrook;

    b. Permitting products that have been sterilized and are still off-gassing to be placed and stored in areas without pollution control and/or adequate ventilation system in the Sterigenics facility in Willowbrook;

    c. Allowing at least six chambers to run at the same time and thereby overloading the vacuum system such that pollution control for one or more chambers was inoperable and/or ineffective in the Sterigenics facility in Willowbrook;

FILED DATE: 10/29/2018 5:05 PM    2018L011252

FILED DATE: 10/29/2018 5:05 PM    2018L011252

d. Allowing exterior doors in the warehouse to remain open for unreasonable lengths of time in the Sterigenics facility in Willowbrook;

e. Failing to timely order and/or replace filters for the dry system and thereby allowing excess amounts of ethylene oxide emissions therefrom in the Sterigenics facility in Willowbrook;

f. Failing to properly monitor EtO emissions and/or document EtO emissions resulting in an inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

g. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

h. By permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook; and

i. By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

126.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

127.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Bob Novak in an amount be determined by a trier of fact.

## COUNT X
### Willful and Wanton Conduct – Bob Novak

128.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 121 and 122 as if fully set forth as Paragraph as if fully set forth as Paragraph 128.

129.   At all relevant times, Bob Novak had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

130.   At all relevant times, Bob Novak knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

131.   Bob Novak breached his duty and was guilty of willful and wanton conduct in one or more of the following ways:

a.   By approving test results and/or monitoring systems which provided misleading and inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

b.   By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

39

FILED DATE: 10/29/2018 5:05 PM   2018L011252

   c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

   d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

   e.  Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

   f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

132.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

133.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Bob Novak in an amount be determined by a trier of fact.

FILED DATE: 10/29/2018 5:05 PM   2018L011252

## COUNT XI
### Negligence – Roger Clark

134.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph 134.

135.    Roger Clark was the Maintenance Supervisor at the Sterigenics facility in Willowbrook from the late 1980s until approximately 2015.

136.    In that capacity, Roger Clark was responsible for calibrating the internal EtO monitors and overseeing the sterilization process at the Sterigenics facility in Willowbrook.

137.    At all relevant times, Roger Clark had a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

138.    At all relevant times, Roger Clark knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

139.    Roger Clark breached his duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

   a. Inaccurately calibrating internal EtO monitors to allow for erroneous monitoring results;

   b. Failing to properly monitor EtO emissions and/or document EtO emissions resulting in an inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

   c. Permitting chamber doors to remain open during and/or after the sterilization process and thereby allowing dangerous

FILED DATE: 10/29/2018 5:05 PM   2018L011252

amounts of ethylene oxide to escape the chamber area in the Sterigenics facility in Willowbrook;

d. Permitting products that have been sterilized and are still off-gassing to be placed and stored in areas without pollution control and/or adequate ventilation system in the Sterigenics facility in Willowbrook;

e. Allowing at least six chambers to run at the same time and thereby overloading the vacuum system such that pollution control for one or more chambers was inoperable and/or ineffective in the Sterigenics facility in Willowbrook;

f. Allowing exterior doors in the warehouse to remain open for unreasonable lengths of time in the Sterigenics facility in Willowbrook;

g. Failing to timely order and/or replace filters for the dry system and thereby allowing excess amounts of ethylene oxide emissions therefrom in the Sterigenics facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook; and

j. By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

140. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

141. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Roger Clark in an amount be determined by a trier of fact.

### COUNT XII
### Willful and Wanton Conduct – Roger Clark

142.  Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 135 and 136 as if fully set forth as Paragraph 142.

143.  At all relevant times, Roger Clark had a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

144.  At all relevant times, Roger Clark knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

145.  Roger Clark breached his duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By deliberately falsifying test results and/or inaccurately calibrating monitoring systems to provide a misleading and inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

    b.  By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

FILED DATE: 10/29/2018 5:05 PM   2018L011252

FILED DATE: 10/29/2018 5:05 PM    2018L011252

c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e.  Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

146.  As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

147.  As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Roger Clark in an amount be determined by a trier of fact.

44

FILED DATE: 10/29/2018 5:05 PM   2018L011252

## COUNT XIII
## Negligence – GTCR, LLC

148.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph 148.

149.     GTCR, LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 2011.

150.     Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

151.     GTCR, LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

152.     At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

153.     GTCR, LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

   a.  By emitting EtO into the air from its Willowbrook facility;

   b.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

   c.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

45

FILED DATE: 10/29/2018 5:05 PM    2018L011252

d. By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

154. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

155. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

46

FILED DATE: 10/29/2018 5:05 PM    2018L011252

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XIV
## Willful and Wanton Conduct – GTCR, LLC

156.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 156.

157.   At all relevant times, GTCR, LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

158.   At all relevant times, GTCR, LLC knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

159.   GTCR, LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a. By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being

FILED DATE: 10/29/2018 5:05 PM   2018L011252

exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

c.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d.  By permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

e.  Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

160.  As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

161.  As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

FILED DATE: 10/29/2018 5:05 PM 2018L011252

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XV
### Ultrahazardous Activity / Strict Liability – GTCR, LLC

162. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 162.

163. GTCR, LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

164. GTCR, LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

165. GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

166. While the activities conducted by GTCR, LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

167. Because the activities of GTCR, LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

168. As a direct and proximate result of GTCR, LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

49

169. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XVI
### Civil Battery – GTCR, LLC

170. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 170.

171. At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

172. Notwithstanding this knowledge, GTCR, LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

173. Plaintiff's contact with EtO was offensive and harmful.

174. GTCR, LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

50

175. Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

176. As a direct and proximate result of GTCR, LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

177. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XVII
## Public Nuisance – GTCR, LLC

178. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 178.

179. The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

180. GTCR, LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high

51

FILED DATE: 10/29/2018 5:05 PM   2018L011252

levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

181.    GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

182.    As a result of GTCR, LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

183.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed Breast cancer which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, ANITA GOVIC, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

Dated: October 28, 2018                     Respectfully submitted,


                                            By: s/Antonio M. Romanucci
                                            Attorney for Plaintiff

Antonio M. Romanucci
Bhavani Raveendran
Martin D. Gould
Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
braveendran@rblaw.net
mgould@rblaw.net

bhensley@rblaw.net
Steven A. Hart
Brian H. Eldridge
Jennifer M. Cascio
HART MCLAUGHLIN & ELDRIDGE,
LLC
22 W. Washington Street, Suite 1600
Chicago, Illinois 60602
(312) 955-0545 telephone
(312) 971-9243 facsimile
shart@hmelegal.com
beldridge@hmelegal.com
jcascio@hmelegal.com

FILED DATE: 10/29/2018 5:05 PM   2018L011252

FILED
10/17/2018 9:11 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| ANITA GOVIC, | ) |
| | ) |
| | ) Case No. 2018L011252 |
| Plaintiff, | ) |
| | ) **JURY DEMANDED** |
| v. | ) |
| | ) |
| STERIGENICS INTERNATIONAL, | ) |
| INC.; STERIGENICS | ) |
| INTERNATIONAL LLC; | ) |
| STERIGENICS U.S., LLC; BOB | ) |
| NOVAK; DANIEL GIBALA; and | ) |
| GTCR, LLC; | ) |
| | ) |
| Defendants. | ) |

**AFFIDAVIT REGARDING DAMAGES SOUGHT**

Bryce T. Hensley, being first duly sworn under oath, states as follows:

1.  I am one of the attorneys of record for the Plaintiff in this matter; and

2.  That the total money damages sought in this civil action exceeds $50,000.

FURTHER AFFIANT SAYETH NOT.

_____
Bryce T. Hensley

[X]  Under penalties as provided by law pursuant to 735 ILCS 5/1-109 (1993), I certify that the statements set forth herein are true and correct.

Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
312.458.1000 *phone*
312.458.1004 *facsimile*
bhensley@rblaw.net

FILED
10/17/2018 9:11 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ANITA GOVIC, | ) | |
| | ) | |
| | ) | Case No.    **2018L011252** |
| Plaintiff, | ) | |
| | ) | **JURY DEMANDED** |
| v. | ) | |
| | ) | |
| STERIGENICS INTERNATIONAL, | ) | |
| INC.; STERIGENICS | ) | |
| INTERNATIONAL LLC; | ) | |
| STERIGENICS U.S., LLC; BOB | ) | |
| NOVAK; DANIEL GIBALA; and | ) | |
| GTCR, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

## JURY DEMAND

The undersigned demands a jury trial.

Respectfully Submitted,

By:   s/Antonio M. Romanucci
Attorney for Plaintiff

Antonio M. Romanucci
Bhavani Raveendran
Martin D. Gould
Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
braveendran@rblaw.net
mgould@rblaw.net
bhensley@rblaw.net

FILED DATE: 10/17/2018 9:11 AM   2018L011252

By:   s/ Steven A. Hart
Steven A. Hart
Brian H. Eldridge
Jennifer M. Cascio
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, Suite 1600
Chicago, Illinois  60602
(312) 955-0545 telephone
(312) 971-9243 facsimile
shart@hmelegal.com
beldridge@hmelegal.com
jcascio@hmelegal.com

CIRCUIT COURT OF COOK COUNTY
LAW DIV., RM. 801  DALEY CTR.
CHICAGO, IL. 60602


ID: LD2018L011252   20181017000004
AT: ROMANUCCI & BLANDIN
TO: MHOLDEN@RBLAW.NET

          * * * * *  N O T I C E  * * * * *

              CASE  18-L-011252


  GOVIC ANITA           V.     STERIGENICS INTERNATIONAL
  THERE WILL BE A CASE MANAGEMENT CALL OF YOUR CASE ON THURSDAY
  THE 13TH DAY OF DECEMBER IN ROOM 2210 AT  9:00 A.M. AT THE
  DALEY CENTER COURT HOUSE, 50 WEST WASHINGTON STREET, CHICAGO, IL

18 L 11252

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ANITA GOVIC,                                    )
                                                )
                                                )   Case No. 2018-L-011252
           Plaintiff,                           )
                                                )
v.                                              )
                                                )
STERIGENICS INTERNATIONAL, INC.;                )   Calendar E
STERIGENICS INTERNATIONAL LLC;                  )
STERIGENICS U.S., LLC; BOB NOVAK;               )
DANIEL GIBALA; and GTCR, LLC;                   )
                                                )
                                                )
           Defendants.                          )

## __ORDER__

    THIS MATTER coming to be heard on Plaintiff's Routine Motion for Leave to File a First Amended Complaint, due notice having been given and the Court fully advised on the premises;

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Routine Motion for Leave to File a First Amended Complaint is granted. 4292

2. Plaintiff may file the First Amended Complaint with the Court, adding additional 4243 defendants Roger Clark and additional allegations.

3. Defendants Sterigenics International, Inc., Sterigenics International LLC, and Daniel 4336 Gibala are hereby dismissed without prejudice pursuant to 735 ILCS 5/2-1009.

Judge Kathy M. Flanagan
NOV 02 2018
Circuit Court - 026

Dated this ____ day of _____, 2018

The Honorable Kathy M. Flanagan

Page 1 of 2

18 L 11252

Antonio M. Romanucci
Bhavani Raveendran
Bryce T. Hensley
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
braveendran@rblaw.net
bhensley@rblaw.net
Attorneys for Plaintiff

Steven A. Hart
Brian H. Eldridge
Jennifer M. Cascio
**HART MCLAUGHLIN & ELDRIDGE**
22 W. Washington Street, Suite 1600
Chicago, IL 60602
(312) 955-0545 *telephone*
(312) 971-9243 *facsimile*
shart@hmelegal.com
beldridge@hmelegal.com
jcascio@hmelegal.com
Attorneys for Plaintiff

Appearance             (12/30/15) CCL N530

FILED
11/20/2018 4:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

ANITA GOVIC

                                Plaintiff      No.   2018 L 011252

          v.

                                             Calendar:   E

STERIGENICS U.S. LLC, BOB NOVAK, ROGER CLARK and GTCR, LLC

                                Defendant

FILED DATE: 11/20/2018 4:14 PM   2018L011252

## APPEARANCE

☑ GENERAL APPEARANCE      0900 - APPEARANCE - FEE PAID; 0909 - APPEARANCE - NO FEE;
                                          0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND               1900 - APPEARANCE & JURY DEMAND - FEE PAID
                                          1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:      ☑   Plaintiff      ☐   Defendant

ANITA GOVIC

(Insert litigant's name.)

                                                  Signature

☐ INITIAL COUNSEL OF RECORD      ☐ PRO SE
☑ ADDITIONAL APPEARANCE         ☐ SUBSTITUTE APPEARANCE

     A copy of this appearance shall be given to all parties who have appeared and have not been found by the
Court to be in default.

☑ Atty. No.:   59648          ☐ Pro Se   99500

(Please complete the following contact information.)

Name:   Hart McLaughlin & Eldridge

Atty. for:   Plaintiff

Address:   22 W. Washington St., Suite 1600

City/State/Zip:   Chicago, Illinois   60602

Telephone:   312.955.0545

Primary Email:   shart@hmelegal.com

Secondary Email:   beldridge@hmelegal.com

Tertiary Email:   jcascio@hmelegal.com

**Pro Se Only:** ☐ I have read and agree to the terms of
the Clerk's Office Electronic Notice Policy and choose
to opt in to electronic notice from the Clerk's office for
this case at this email address:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

11/20/2018 4:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

FILED DATE: 11/20/2018 4:29 PM   2018L011252

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ANITA GOVIC

(Name all parties)

v.

STERIGENICS U.S., LLC., et al.

Case No.   2018-L-011252

PLEASE SERVE: Sterigenics U.S. , LLC
c/o Illinois Corporation Service, Registered Agent
801 Adlai Stevenson Drive, Springfield, Illinois 62703

☑ SUMMONS   ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Summons - Alias Summons**                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office. 11/20/2018 4:29 PM DOROTHY BROWN

Atty. No.: 35875

Atty Name: Romanucci & Blandin, LLC

Atty. for: Plaintiff

Address: 321 N. Clark Street, Suite 900

City: Chicago

State: IL    Zip: 60654

Telephone: (312) 458-1000

Primary Email: bhensley@rblaw.net

Witness: _____

_____
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person):

FILED DATE: 11/20/2018 4:29 PM  2018L011252

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 11/20/2018 4:29 PM  2018L011252

11/20/2018 4:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

2018L011252

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ANITA GOVIC

(Name all parties)

v.

STERIGENICS U.S., LLC., et al.

Case No.  2018-L-011252

PLEASE SERVE:  Roger Clark
5632 South Nordica
Chicago, Illinois  60638

### ☑ SUMMONS   ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

**Summons - Alias Summons**                                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

FILED DATE: 11/20/2018 4:29 PM    2018L011252

11/20/2018 4:29 PM DOROTHY BROWN

Atty. No.: 35875

Witness: _____

Atty Name: Romanucci & Blandin, LLC

Atty. for: Plaintiff

_____

DOROTHY BROWN, Clerk of Court

Address: 321 N. Clark Street, Suite 900

City: Chicago

State: IL  Zip: 60654

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person):

Telephone: (312) 458-1000

Primary Email: bhensley@rblaw.net

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

FILED DATE: 11/20/2018 4:29 PM   2018L011252

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

FILED
11/20/2018 4:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

FILED DATE: 11/20/2018 4:29 PM   2018L011252

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | |

(08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ANITA GOVIC

(Name all parties)

v.

STERIGENICS U.S., LLC., et al.

Case No.  2018-L-011252

PLEASE SERVE: GTCR, LLC
c/o NRAI Corporate Services, Registered Agent
208 S. LaSalle Street, Suite 1700, Chicago, Illinois  60604

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process.  Kiosks with internet access are available at all Clerk's Office locations.  Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Summons - Alias Summons**                                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.    11/20/2018 4:29 PM DOROTHY BROWN

FILED DATE: 11/20/2018 4:29 PM   2018L011252

Atty. No.: 35875

Atty Name: Romanucci & Blandin, LLC

Atty. for: Plaintiff

Address: 321 N. Clark Street, Suite 900

City: Chicago

State: IL    Zip: 60654

Telephone: (312) 458-1000

Primary Email: bhensley@rblaw.net

Witness: _____

_____
    DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

FILED DATE: 11/20/2018 4:29 PM   2018L011252

FILED
11/20/2018 4:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L011252

FILED DATE: 11/20/2018 4:29 PM   2018L011252

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ANITA GOVIC

(Name all parties)

v.

STERIGENICS U.S., LLC., et al.

Case No.  2018-L-011252

PLEASE SERVE:  Bob Novak
7775 S. Quincy Street
Willowbrook, Illinois  0527

### ☑ SUMMONS   ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.   11/20/2018 4:29 PM DOROTHY BROWN

Atty. No.: _35875_

Atty Name: _Romanucci & Blandin, LLC_

Atty. for: _Plaintiff_

Address: _321 N. Clark Street, Suite 900_

City: _Chicago_

State: _IL_   Zip: _60654_

Telephone: _(312) 458-1000_

Primary Email: _bhensley@rblaw.net_

Witness: _____

_____
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person):

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 11/20/2018 4:29 PM    2018L011252